In the Matter of the Petition of
**E.R.S., Petitioner,**

**For the Adoption of a Minor Child, B.N.A.A.,**

v.

**O.D.A., Respondent.**

No. 88SC214.

Supreme Court of Colorado,
En Banc.

Sept. 18, 1989.

Richard V. Lohman, Catherine Woelk-Rudisell, Susemihl, Lohman, Kent, Carlson & McDermott, P.C., Colorado Springs, for petitioner.

John H. O'Dowd, Jr., Warren, Mundt, Martin & O'Dowd, P.C., Colorado Springs, for respondent.

Justice MULLARKEY announced the judgment of the Court and delivered an opinion in which Justice ROVIRA joined.

We granted certiorari in this case to clarify what must be established in a stepparent adoption regarding the likelihood of the natural parent's payment of future child support in order for the stepparent to adopt the child. We hold that the adopting stepparent must prove the statutory requirements for adoption and the evidence, taken as a whole, must be sufficient for the court to conclude that it is unlikely that the natural parent will make future support payments on a regular and consistent basis. Because these factors have been established in this case, we reverse and remand the case to the court of appeals with directions to return it to the district court in order to allow the stepparent adoption of the child B.N.A.A.

## I.

This case arises from a dispute over the interpretation of an adoption case previously decided by this court, *In re Petition of R.H.N.*, 710 P.2d 482 (Colo.1985). In *R.H.N.*, we held that in a stepparent adoption, the court must consider the following factors:

(1) whether the best interests of the child are served by the termination of the natural parent's rights and by the adoption; (2) whether the natural parent failed without cause to pay reasonable child support for one year or more; and (3) whether there is *any likelihood* that the natural parent will provide child support.

*R.H.N.*, 710 P.2d at 485 (emphasis added). This case focuses solely on the interpretation of the third factor as applied to the following facts.

C.S. (the child's mother) and O.D.A. (the child's father) married in April, 1983, separated in November of that year, and in March of 1984, their first and only child, B.N.A.A., was born. In accordance with the temporary orders entered in the dissolution proceedings, O.D.A. paid $100 per month in child support to C.S. from May through September, 1984, of the first year of the child's life. The final orders entered in September, 1984, provided that O.D.A. was to continue paying $100 per month in child support through the court registry fund. In the next month, October, 1984, C.S. married E.R.S. (the stepfather).

Also in October of 1984, O.D.A. talked with C.S. about his difficulty in paying child support for October. He testified that, as a result of that conversation, he believed that the mother had excused his obligation to pay child support although he also testified that he had been advised by his attorney that his child support obligation was permanent. C.S. testified that she intended to excuse payment of his child support obligation only for the month of October, 1984. In any event, it is undisputed that, after this conversation, the father did not pay any child support from October, 1984, until March, 1986, a seventeen-month period.

The stepfather filed a petition to adopt the minor child on March 10, 1986. In the same month, after he was told that a stepparent adoption action for B.N.A.A. would be filed, O.D.A. deposited $200 into the court registry fund. While the adoption petition was pending from March, 1986, to October 31, 1986, the father paid into the registry fund a total of $1,500 for child support. As of October 31, 1986, however, O.D.A. still owed $900 in arrearages for child support and had not made any payments in May, July, or September of 1986.

The hearing on the petition for adoption was held on October 9 and November 4, 1986, before the juvenile commissioner (the commissioner). Testimony at the hearing established that throughout most of the seventeen-month period of his nonpayment of child support, O.D.A. was living with his parents, had minimal expenses and was employed full time. The evidence presented revealed that many of the child support payments actually were made by O.D.A.'s father, the minor child's paternal grandfather. Notwithstanding this evidence, the father testified that he intended to make future child support payments on a monthly basis.

After hearing testimony from ten witnesses, the commissioner found by clear and convincing evidence that the best interests of the child would be served by the adoption because the stepparent E.R.S. had acted as the child's primary father figure since the child's birth, and E.R.S. was a warm and nurturing parent who interacts well with the child and provides for the child's needs. The commissioner found that the child would not suffer from the termination of the parent-child relationship because of the lack of a close relationship between the child and O.D.A. After determining that the adoption was in the best interests of the child, the commissioner ruled that the child was available for adoption pursuant to section 19–4–107(1)(e)(II), 8B C.R.S. (1986)[1] because the father had failed without cause to provide reasonable child support for the twelve months immediately preceding the commencement of the adoption proceeding. Regarding the probability of the father's future payment of child support, the commissioner equivocally stated that the father "may pay in the future and further that he may not if it is not convenient. The court can make no strong findings either way that he will pay in the future." The commissioner then granted the stepparent adoption.

The father appealed the commissioner's ruling to the district court pursuant to section 19–1–110(5), 8B C.R.S. (1986).[2] The district court affirmed the commissioner's

---

1. This section is now codified at section 19–5–203(1)(d)(II), 8B C.R.S. (1988 Cum.Supp.).

2. This section is now codified at section 19–1–108(5), 8B C.R.S. (1988 Cum.Supp.).

finding that the adoption was in the best interests of the child. However, it remanded the case to the commissioner on the issue of the likelihood of the father's payment of future child support. In its order of remand, the district court stated that the law requires the stepparent "to prove by clear and convincing evidence that the natural parent *will not* provide child support in the future." (Emphasis added.)

On remand, the commissioner clarified his earlier ruling by stating that, "The Court finds by clear and convincing evidence that it is *unlikely* that the natural father would pay support regularly in the future," but that it could not "find by clear and convincing evidence that the natural father *will not* pay child support in the future." (Emphasis added.) The commissioner explained that he interpreted the future payment provision of *R.H.N.* regarding the court's consideration of whether there is any likelihood of future payment by the natural parent to mean "in terms of *likelihood* rather than *certainty*," and accordingly, the commissioner again granted the adoption petition. (Emphasis added.)

The commissioner's decision once more came before the district court for review, and the district court reversed. Based upon the commissioner's inability to "find by clear and convincing evidence that the father *will not* pay child support in the future" (emphasis added), the district court denied the stepparent adoption. The district court again stated that it interpreted *R.H.N.* to require an adopting stepparent to prove that "there is *no likelihood* that the natural parent will provide child support in the future." (Emphasis added.) The stepfather appealed the case to the court of appeals. In an unpublished opinion, the court of appeals affirmed the district court's denial of the adoption petition. At the stepparent's request, we granted certiorari to clarify what must be established in a stepparent adoption proceeding regarding the likelihood of the natural parent's payment of future child support.

## II.

Under Colorado statute, a stepparent adoption proceeding necessarily includes the termination of the parental rights of the non-custodial natural parent. *See* §§ 19–5–101 to 19–5–107, 8B C.R.S. (1988 Cum.Supp.).[3] A proceeding for stepparent adoption commences when the stepparent files an adoption petition pursuant to section 19–5–208, 8B C.R.S. (1988 Cum.Supp.). The court first must determine whether the adoption is in "the best interests of the child" in accordance with section 19–5–210(2)(d). *See, e.g., R.H.N.,* 710 P.2d at 485; *see also In the Matter of the Petition of J.A.A. v. C.R.,* 618 P.2d 742 (Colo.Ct. App.1980) (petition for stepparent adoption denied because court found that adoption not in best interests of child).

Once the court has determined that the adoption is in the best interests of the child, it must then determine whether the child "is available for adoption" pursuant to section 19–5–203. If the natural parent does not give consent to the child's adoption, the adopting stepparent must show that the natural parent either has abandoned the child for a period of a year or more, or "has failed without cause to provide reasonable support for such child for a period of one year or more." § 19–5–203(d)(II).

■ Parents who protest the adoption of their children must be provided with "fundamentally fair procedures" because natural parents have "a fundamental liberty interest in the companionship, care, custody, and management of their child." *R.H.N.,* 710 P.2d at 487; *see also Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982). In order to ensure that the proceedings are fair, the statutorily mandated requirements for an adoption—that the adoption is in the best interests of the child, and that the natural parent has failed without cause to

**3.** Sections 19–5–101 to 19–5–215, 8B C.R.S. (1988 Cum.Supp.) were repealed and reenacted in 1987. These provisions essentially contain the previous provisions which were located at sections 19–4–101 to 19–4–116, 8B C.R.S. (1986), with only slight modifications which are not relevant here.

provide support for a year or more—must be proven by "clear and convincing evidence," a higher standard of proof than is used in most civil proceedings. *Santosky*, 455 U.S. at 748, 102 S.Ct. at 1392; *R.H.N.*, 710 P.2d at 488; *People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982). Strict compliance with these statutory requirements and procedures for an adoption is necessary because of the harshness of a permanent termination of parental rights. *Petition of T.C.H. v. J.M.S.*, 190 Colo. 246, 248, 545 P.2d 1357, 1359 (1976); *see also In re Petition of F.J.H.*, 628 P.2d 159, 161 (Colo.Ct.App.1981), *cert. denied* (1981).

■ After the adopting stepparent has proved the statutory requirements, but before granting the adoption, a court must also consider whether in the future "there is any likelihood that the natural parent will provide child support." *R.H.N.*, 710 P.2d at 487. This factor was added in *R.H.N.* as a consideration in a stepparent adoption proceeding to ensure that the natural parent is provided with a fundamentally fair procedure. We conclude that this provision means that an adoption will be granted if a court determines that, based on the natural parent's past conduct and other relevant considerations outlined in detail below, it is *unlikely* that the natural parent will make future support payments on a regular, continuous basis.

### III.

The parties in this case do not dispute the trial court's determination that the adoption is in the best interests of the child or the court's finding that the natural father failed without cause to pay child support for over a year. The sole controversy centers around the interpretation and application of the statement in *R.H.N.* that the trial court consider whether there is "any likelihood" of future support payments by the natural father. The district court held that the phrase "any likelihood" of future payment as used in *R.H.N.* should be interpreted to mean that adoption is not permitted unless the adopting parent can prove by clear and convincing evidence that there is *no likelihood* of future payments by the natural parent. This standard not only is inconsistent with public policy underlying stepparent adoption but also misinterprets our holding in *R.H.N.*

To evaluate the trial court's "no likelihood" standard, we turn to the facts and analysis in *R.H.N.* In that opinion, we stated that, after a court determines that the natural parent has failed to provide child support for twelve months, the court must look beyond the twelve-month period to determine whether there is any likelihood that the natural parent will provide child support. 710 P.2d at 487. We then applied this approach to the facts of *R.H.N.* and concluded that it was unlikely that D.A.K. (the natural father) would pay child support in the future. *Id.* We first noted D.A.K.'s admission that, although he had been financially able to pay child support prior to his incarceration, he did not do so. We also noted D.A.K.'s refusal to pay any portion of his small prison income as child support. *Id.* at 487–88. With respect to the likelihood of future payments, we stated only that "[m]oreover, D.A.K. did not indicate at the hearing that he had any intention of providing child support." *Id.* at 487. It is apparent, then, that *R.H.N.* did not expressly place the burden on the stepparent to prove by clear and convincing evidence that there is "no likelihood" that the natural parent will make future child support payments.

Nor is the imposition of such a burden consistent with *R.H.N.* As that case states, the stepparent's burden is to prove the two statutory requirements: that the adoption is in the best interests of the child and that the natural parent has failed without cause to support the child for a year or more. After the adopting stepparent has met that burden, the natural parent can prevent the adoption only by proving that it is likely that he or she will make consistent support payments in the future. Under *R.H.N.*, the natural parent must assert the likelihood that future payments will be made and the evidence presented by the natural parent in support of that contention will be weighed against the natural parent's past failure to pay child support.

This reliance on the natural parent to prove the likelihood of future payments is logical and fair from an evidentiary perspective because the natural parent, not the adopting stepparent, will possess the relevant facts to show whether he or she will make regular future payments.

■ If the natural parent resisting the adoption presents sufficient evidence of changed circumstances or other evidence that the past pattern of nonpayment will not be repeated in the future, this could constitute adequate grounds for a court to deny an adoption petition, even though that parent may have unjustifiably withheld child support payments for the year before the adoption proceedings. We underscore, however, that a finding that the natural parent will make occasional or sporadic payments is not enough to defeat the stepparent adoption. The future payments must be consistent and regular, in accordance with the applicable court orders regarding child support.

■ In determining the likelihood that a natural parent will pay future child support, a court should consider several factors including the frequency, consistency, and duration of the natural parent's past payments of support, as well as the parent's statements regarding intent to pay in the future, and any other evidence such as employment stability bearing on the likelihood that the parent will pay child support on a regular basis in the future. These factors must be viewed in light of the child support statutes which make plain the legislature's concern that support payments be made on a regular basis in a predetermined amount so that the custodial parent can provide and plan for the child's financial needs. *See* § 14–10–115, 6B C.R.S. (1987) (mandating child support guidelines of monthly payment schedules to provide adequate support for children, payable up until child reaches age of majority).

Thus, a primary consideration in determining whether the non-custodial natural parent will pay child support on a regular consistent basis in the future is the natural parent's past conduct regarding child support payments. A natural parent's non-compliance with a court order to make support payments over a period of a year or more is strong evidence that the natural parent is unlikely to pay child support in the future. If the natural parent, like D.A.K. in the *R.H.N.* case, fails to even assert that he or she will make future payments, then the court's inquiry is at an end. It may conclude, based on the stepparent's proof that the natural parent has failed to make payments for at least twelve months, that it is unlikely that the natural parent will make future payments.

The court will consider any evidence of changed circumstances, such as the natural parent's obtaining employment after a period of unemployment, which would indicate a significant departure from that person's previous pattern of non-payment. For example, in applying this standard, the fact that a natural parent is making child support payments on a regular and consistent basis and has substantially paid off the arrearages is a relevant indication that the natural parent is likely to continue to provide child support in the future. *See In re Petition of F.J.H.*, 628 P.2d 159, 161 (Colo. Ct.App.1981) (adoption petition denied because fact that natural parent made some payments in two previous years and now "resumed payments on regular basis indicates his willingness to honor his parental obligations").

Whether a natural parent is unlikely to pay support in the future is a question of fact for the trial court to determine on a case by case basis, considering all the evidence as a whole, including the credibility of the witnesses. *See generally R.H.N.*, 710 P.2d at 488.

IV.

Several reasons favor our construction of *R.H.N.* and our rejection of the trial court's "no likelihood" standard. First, public policy favors stepparent adoption because the adoption helps solidify an already existing family unit consisting of one of the biological parents. *See generally* Note, *A Survey of State Law Authorizing Stepparent*

*Adoptions Without the Noncustodial Parent's Consent,* 15 Akron Law Rev. 567, 568 (1982); *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 555, 54 L.Ed.2d 511 (1978) ("the result of the adoption in this case is to give full recognition to a family unit already in existence"). As the facts of this case illustrate, often the stepparent family is the only family which the child has known.

Another factor encouraging stepparent adoption is the recognition that even in the absence of adoption, a stepparent is likely to incur financial obligations for the child. *See* Ramsey & Masson, *Stepparent Support of Stepchildren,* 36 Syracuse L.Rev. 659, 709 (1985); *see also Miller v. Miller,* 97 N.J. 154, 478 A.2d 351 (1984) (stepfather liable for support of his ex-wife's children even though he never adopted them); Annotation, *Stepparent's Postdivorce Duty to Support Stepchild,* 44 A.L.R. 4th 499 (1986). The financial burden falls on the stepparent because of the sad fact that the majority of fathers living apart from their children do not contribute to their children's support. *See* Ramsey & Masson, *Stepparent Support of Stepchildren,* 36 Syracuse L.Rev. 659, 660 (1985).

In accordance with this benevolent view of adoption, the modern trend is to make stepparent adoption easier. To require a showing by the stepparent of "no likelihood" of future child support payments would call for an impossible degree of certainty about the natural parent's future conduct which would prevent or at least greatly impede stepparent adoption.

Second, if this court were to adopt the "no likelihood" standard, it would create a situation where even a remote possibility of payment at some future point by the natural parent might defeat a meritorious petition for adoption, bringing about a result contrary to the child's best interests.

The conflict between the best interests of the child and the natural parent's right to parenthood, which can arise in a stepparent adoption such as this case, is resolved in Colorado law by placing primary importance on the best interests of the child. It is well-established in Colorado that "paren-

tal rights must yield to the interest and welfare of the child." *Stjernholm v. Mazaheri,* 180 Colo. 352, 356, 506 P.2d 155, 157 (1973); *see also* Note, *A Survey of State Law Authorizing Stepparent Adoptions Without the Noncustodial Parent's Consent,* 15 Akron L.Rev. 567, 570 (1982) (trend towards protecting best interests of child over parent's right to control child). In an adoption proceeding, "the primary consideration is the welfare of the child, secondly the rights of the parents." *Moreau v. Buchholz,* 124 Colo. 302, 309, 236 P.2d 540, 543 (1951); *see also R.H.N.,* 710 P.2d at 486 n. 3 (stressing importance of best interests of child in adoption proceeding). This approach is consistent with the Supreme Court's decision in *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), in which the Court held that granting the stepparent adoption petition based solely on a consideration of the best interests of the child did not violate the natural father's due process rights.

Thus, in this context, a standard which simultaneously protects the natural parent's rights while serving the best interests of the child is a standard which allows an adoption after it is established that, based on the natural parent's past conduct and other relevant factors, it is *unlikely* that the parent will make future payments on a regular and consistent basis.

Our interpretation of the *R.H.N.* future support payment provision does not infringe on the natural father's due process rights. The parent-child relationship is constitutionally protected, *see e.g., Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and due process requires a hearing before parental rights can be terminated. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). But in a stepparent adoption, the natural parent's rights are protected by the procedural safeguards which ensure that responsible and caring natural parents are given adequate opportunity to retain their parental rights. For instance, an adoption is not allowed until it has been proven by clear

and convincing evidence that the natural parent has for over a year unjustifiably refused, in violation of a court order, to pay *any* child support. A natural parent's obligation to pay child support is adaptable to each parent's ability to pay as evidenced by the procedures by which a parent can modify his or her support obligations if the parent has financial difficulties or for some legitimate reason is unable to pay. Moreover, as discussed above, an adoption will not be permitted if the natural parent has sufficiently changed his or her pattern of conduct so as to convince the trial court that payments will be made on a continuous regular basis in the future.

V.

Having clarified the appropriate standard and the relevant factors, we now address the facts of this case to determine whether the evidence shows that the natural father is unlikely to make future child support payments on a regular continuous basis. As noted above, the natural father, O.D.A., does not dispute the trial court's determination that the adoption is in the best interests of the child. O.D.A.'s only argument concerns application of the proper standard for the likelihood of his payment of future child support.

The fact that O.D.A. failed to make any support payments for a seventeen-month period when he was able to pay and knew that he was legally obligated to pay constitutes strong evidence that he will not pay support on a regular and consistent basis in the future. The fact that he began making some payments and has reduced the amount of back child support he still owes is certainly relevant. However, it is clear that he began making payments only after he was informed of the adoption proceeding, and that many of the payments were not made by him, but by his father.

In addition, although O.D.A. began making child support payments at the initiation of the adoption proceeding, his payments were sporadic and not made in consistent amounts. O.D.A. admits that, immediately after he swore in court in October of 1986 that he intended to make regular monthly payments until the child reached the age of majority, he made no payments for a continuous five and one-half month period from November 1, 1986 through May 21, 1987. The record of payment into the registry fund reveals that of the 31 months listed, O.D.A. made payments in only 20 (or less than two-thirds) of the months, O.D.A. did not make payments on a consistent basis, and a substantial amount of the arrearages remains unpaid.

The facts of this case are substantially similar to those in *Stjernholm v. Mazaheri*, 180 Colo. 352, 506 P.2d 155 (1973) in which this court granted an adoption decree over the natural father's objection due to the natural father's failure to make child support payments. In *Stjernholm* the natural father contended that he failed to make payments because he saw that the child's financial needs were being adequately met by the stepfather and that the natural father was fulfilling his role as a parent in all other respects. The trial court denied the petition for adoption and held that the termination of "a parent's rights for failure to meet a monetary obligation for a period of one year under those circumstances is so slight a cause that it violates his substantive due process rights...." *Stjernholm*, 180 Colo. at 355, 506 P.2d at 156. This court reversed and held that the trial court overlooked the fundamental purpose of the adoption statute—"that of integrating the child of a broken home into a new home, maintained by both a father and a mother, where the opportunity exists of affording a greater measure of care, guidance and discipline so vital to the child's present and future development." *Id.* at 357, 506 P.2d at 158. The Colorado Supreme Court granted the adoption petition concluding:

> We cannot say that this objective of promoting a more stable home environment is not such a compelling state interest as to outweigh and override the right of a natural parent who wilfully fails *without just cause* in the performance of a basic obligation toward such child. While the law should be solicitous toward maintaining the integrity of the natural relation

between a parent and child, the statute should not be interpreted in favor of a father who seeks the benefit of parental rights but shuns the burden of parental obligations.

*Id.* at 357–358, 506 P.2d at 158 (emphasis in original, citations omitted).

In this case, the natural father admitted that he failed to make support payments in spite of his awareness that he was legally obligated to do so. He also testified as to his intention to make future payments, but the commissioner, who was in the best position to assess the credibility of this testimony, found that it was unlikely that he would continue to make regular periodic payments in the future. The commissioner's assessment proved to be true as shown by the five and one-half months of O.D.A.'s nonpayment of child support in the time period immediately following the hearing. In sum, the evidence shows that O.D.A. did not consistently pay support in the past, is not consistently paying now, and as such, is unlikely to pay consistently in the future. We agree with the commissioner's conclusion that, taken as a whole, this evidence meets the appropriate standard that it is unlikely that the natural father will continue to make regular child support payments on a continuous basis in the future.

### VI.

In conclusion, we hold that the evidence supports the commissioner's determination that the adoption was in the best interests of the child, that the natural father had failed to support the child for over a year without just cause, and that the natural father is unlikely to make regular child support payments on a consistent basis in the future. Because all the requirements for adoption of the child have been met, we reverse and remand the case to the court of appeals with directions to return it to the district court in order to allow the stepparent adoption of the child B.N.A.A.

ERICKSON, J., specially concurs, and VOLLACK, J., joins in the special concurrence.

LOHR, J., dissents, and QUINN, C.J., and KIRSHBAUM, J., join in the dissent.

Justice ERICKSON specially concurring:

Although I join the plurality's opinion insofar as it reverses the court of appeals decision affirming the district court's denial of the adoption, I write separately because I believe that we should explicitly modify our holding in *Petition of R.H.N.*, 710 P.2d 482 (Colo.1985).

Both adoption and parental termination are wholly statutory in Colorado. *Israel v. Allen*, 195 Colo. 263, 265, 577 P.2d 762, 764 (1978) (adoption); *see also People in Interest of A.M.D.*, 648 P.2d 625, 634 (Colo.1982) (parental termination). Adoption by a stepparent at the time of the proceedings below was governed by section 19–4–107(1)(e)(II), 8B C.R.S. (1986), which provided, in relevant part, that a child was available for adoption upon

[w]ritten and verified consent of the parent in a stepparent adoption where the other parent has abandoned the child for a period of one year or more *or where he has failed without cause to provide reasonable support for such child for a period of one year or more.*

(Emphasis added.) In *R.H.N.*, 710 P.2d 482, 485, we stated:

Termination of parental rights in stepparent adoption proceedings needs to be addressed in a broader context than the single provision of the statute addressed by the court of appeals, failure to pay child support without cause for one year. In contrast to termination of parental rights under section 19–4–101, 8 C.R.S. (1985 Supp.), and adoption under section 19–4–110, 8 C.R.S. (1978), which are separate proceedings, a termination/stepparent adoption is a single proceeding, commenced when a stepparent files a petition to adopt. § 19–4–107(1)(e)(II). The consequence is that the trial court must address at the same time a number of factors: (1) whether the best interests of the child are served by the termination of the natural parent's rights and by the adoption; (2) whether the natural parent

failed without cause to pay reasonable child support for one year or more; and (3) *whether there is any likelihood that the natural parent will provide child support.*

(Emphasis added.) Even though the "best interests of the child" analysis was not contained within former section 19–4–107, the court properly concluded that it was a factor to consider in a stepparent adoption, since it was required by the general adoption statute. The origin of the third factor—the likelihood of future support—is obscure. At a later point in *R.H.N.* it is suggested that the third factor is constitutionally required, although no directly relevant authority is cited.[1] Because stepparent adoption is entirely statutory, this court may not impose any requirements in excess of the statute, unless mandated by the state or federal constitution. I do not read the plurality opinion as saying that the third factor of *R.H.N.* is constitutionally required. If it was, a strong argument could be made that the burden of proof should be by clear and convincing evidence, and that it should be placed on the party seeking the adoption. *See R.H.N.,* 710 P.2d at 488 n. 5.

However, I do not believe that consideration of the likelihood of future support is constitutionally required. *See Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) (natural father's substantive due process rights not violated by adoption and termination procedure that considered only the best interests of the child). Therefore, I would not impose the likelihood of future support factor as an additional element of proof for the party asking for adoption, or, as the plurality does, allow it as an affirmative defense. The rights of the parties involved are al-ready adequately protected by the best interests analysis, and the requirement of parental fault in wholly failing to make support payments for a year. Whether or not the natural parent would make support payments in the future can be adequately addressed by the court when it determines where the best interests of the child lie.

Our statements pertaining to the likelihood of future support were not essential, or even necessary, to the holding in *R.H.N.* Because future support is not a statutory defense to a stepparent adoption, and is not a constitutional requirement, I would no longer recognize the future support factor that was created in *R.H.N.* as a separate consideration in an adoption proceeding. Since the district court and court of appeals denied the adoption on the basis that the likelihood of future support was not sufficiently proven by the party seeking the adoption, I agree with the plurality that those judgments must be reversed. Accordingly, I specially concur in the court's judgment.

I am authorized to say that Justice VOLLACK joins in this special concurrence.

Justice LOHR dissenting:

I agree with the plurality that for a child to be available for adoption by a stepparent it must be determined that the natural parent is unlikely to make future support payments consistently. I disagree, however, with the plurality's allocation of the burden of proof on that issue and its decision concerning the quantum of evidence necessary to satisfy that burden. In any event, we should not resolve the issue of the likelihood of consistent future support payments on its merits on appeal, but instead

---

1. In *R.H.N.,* 710 P.2d at 487, we stated:

   However, because natural parents have a fundamental liberty interest in the companionship, care, custody, and management of their children, a court must provide parents with fundamentally fair procedures if termination of parental rights is sought. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *People ex rel. A.M.D.,* 648 P.2d 625 (Colo.1982). In order to provide a procedure that is fundamentally fair, once a court has determined that a natural parent

   has failed to provide child support during the twelve-month period immediately preceding the filing of the petition under section 19–4–107(1)(e)(II), the court must look beyond the twelve-month period to determine whether there is any likelihood that the natural parent will provide child support.

   Neither *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599, nor *People ex rel. A.M.D.,* 648 P.2d 625, discuss any future support requirement.

should remand so that the trier of fact can make the necessary findings based on the applicable standard and burden as determined by this court. For these reasons, I respectfully dissent.

## I.

In the case of *In re R.H.N.*, 710 P.2d 482 (Colo.1985), we held that in a stepparent adoption in which the availability of the child for adoption is based upon a natural parent's failure without cause to provide reasonable child support, a court must address three factors:

> (1) whether the best interests of the child are served by the termination of the natural parent's rights and by the adoption; (2) whether the natural parent failed without cause to pay reasonable child support for one year or more; and (3) whether there is any likelihood that the natural parent will provide child support.

*Id.* at 485. The first two factors are derived from Colorado statutes. *See* § 19–5–210(2)(d), 8B C.R.S. (1988 Supp.) (best interests of the child); § 19–5–203(1)(d)(II) (failure to provide support). The third was adopted by this court in order to provide the fundamentally fair procedure for termination of parental rights that is required to accord due process of law to the natural parent. *R.H.N.*, 710 P.2d at 487.[1] As a result, the third factor in *R.H.N.* must be established as one essential ground for termination of the parental rights of a nonconsenting natural parent in a stepparent adoption proceeding in which the availability of the child for adoption is based upon the failure of the natural parent to provide support.[2]

In *R.H.N.* we noted that "[d]ue process prohibits a state from severing a natural parent's rights in the relationship with the parent's child absent clear and convincing evidence supporting the grounds for termination." 710 P.2d at 488 n. 5; *accord Santosky v. Kramer*, 455 U.S. at 747–48, 102 S.Ct. at 1391–92.[3] This is because "[i]n parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." *Santosky v. Kramer*, 455 U.S. at 758, 102 S.Ct. at 1397. Because *R.H.N.* requires that the unlikelihood that the natural parent will provide child support in the future be established before parental rights can be terminated in a stepparent adoption, this ground for termination must be established by clear and convincing evidence as well.

The plurality opinion is persuasive in its construction of the third of the *R.H.N.* factors to mean that it must be established that the natural parent is unlikely to make future support payments consistently. *See* plurality op., parts II and III. The plurality opinion also correctly identifies the considerations relevant to resolving the issue of the likelihood of consistent future child support payments. *See* plurality op., part III, at 848–49.

The plurality, however, distinguishes among the three grounds for termination in *R.H.N.* with regard to the allocation of the burden of proof and the quantum of evi-

---

**1.** "[B]ecause natural parents have a fundamental liberty interest in the companionship, care, custody, and management of their children, a court must provide parents with fundamentally fair procedures if termination of parental rights is sought." *R.H.N.*, 710 P.2d at 487 (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

**2.** "In order to provide a procedure that is fundamentally fair, once a court has determined that [the second *R.H.N.* factor has been established] the court must look beyond the twelve-month period to determine whether there is any likelihood that the natural parent will provide child support." *R.H.N.*, 710 P.2d at 487.

**3.** Although *Santosky v. Kramer* involved termination of parental rights incident to a child neglect proceeding, we held in *R.H.N.* that "the requirement for clear and convincing evidence supporting termination is equally applicable to the parental right terminations involved in stepparent-initiated adoption proceedings because the same fundamental liberty interest of the natural parent in the relationship with the child is involved and because the state through its courts acts to sever a parental tie." *R.H.N.*, 710 P.2d at 488 n. 5.

dence necessary to satisfy that burden. The plurality acknowledges that the stepparent has the burden of establishing each of the first two grounds by clear and convincing evidence. Plurality op. at 848. With respect to the third, however, the plurality holds that the burden shifts to the natural parent to prove that "it is likely that he or she will make consistent support payments in the future." Plurality op. at 848. Although the plurality opinion is not explicit concerning the quantum of evidence necessary to satisfy that burden, it appears to adopt a preponderance of the evidence standard. I see no basis for allocating the burden of proof or establishing the quantum of evidence necessary to satisfy that burden any differently for the third ground for termination than for the first two. *R.H.N.* makes the third ground as essential to termination of parental rights as the other two. Therefore, due process requires that it be established by the stepparent by clear and convincing evidence in order to terminate the rights of the natural parent. *R.H.N.*, 710 P.2d at 488 n. 5; *Santosky v. Kramer*, 455 U.S. at 747–48, 102 S.Ct. at 1391–92.

## II.

Even if I agreed with the plurality opinion regarding the applicable burden of proof, I could not agree that we should determine on appeal the likelihood that the natural parent will consistently make child support payments in the future. The plurality opinion explicates for the first time the standard, the burden of proof and the quantum of evidence rules that are to be applied in resolving this issue and offers helpful guidance for resolution of that issue. The finder of fact did not have the benefit of this in making a finding concerning the likelihood that the natural parent would make child support payments consistently in the future. Moreover, the evidence in this case leaves this issue in considerable doubt—doubt that should be re-

solved by the finder of fact. *See, e.g., Bond v. District Court,* 682 P.2d 33, 40–41 n. 4 (Colo.1984); *Berkley v. Consolidated Lower Boulder Reservoir & Ditch Co.,* 73 Colo. 483, 488, 216 P. 548, 550 (1923).[4] Although the natural father did not pay court-ordered child support for a seventeen-month period and he acknowledged that his attorney had advised him that he must make the payments as ordered, he testified that on the basis of a conversation with the child's mother, he believed she had excused his obligation to pay. After the petition for stepparent adoption was filed, the natural father paid $1500 during the course of seven months to reduce the arrearage to $900. He testified that he intended to make monthly child support payments in the future. The finder of fact, who heard this testimony, is uniquely well positioned to assess the natural parent's credibility and resolve. As the plurality notes, "whether a natural parent is unlikely to pay support in the future is a question of fact for the trial court to determine on a case by case basis, considering all the evidence as a whole, including the credibility of the witnesses." Plurality op. at 849. We should apply that rule here.

## III.

I would reverse the judgment of the court of appeals and would remand the case to that court with directions to remand it to the district court for further proceedings based on the views expressed in this dissenting opinion. Fundamental fairness requires no less.

QUINN, C.J., and KIRSHBAUM, J., join in this dissent.

---

**4.** In cases where the evidence was not conflicting we occasionally have implicitly resolved factual issues without remanding to the trier of

fact. *See R.H.N.,* 710 P.2d 482 (implicitly resolving likelihood of future payments of child support).