Upon the Petition of: I.R.D., Petitioner–Appellee, For the Adoption of:

G.L.R., Minor Child, and Concerning S.C.R., Respondent–Appellant.

No. 98CA0159.

Colorado Court of Appeals, Div. I.

Dec. 24, 1998.

Bonnie M.J. Schriner, Denver, Colorado, for Petitioner–Appellee

Rice, Coppola & Hamrick, P.C., Joseph L. Coppola, Greenwood Village, Colorado, for Respondent–Appellant

Opinion by Judge METZGER.

S.C.R. (father) appeals the judgment terminating his parent-child legal relationship with his son, G.L.R. We affirm.

G.L.R. was born in Missouri on May 26, 1992. Although father has never disclaimed paternity, he refused to place his name on the birth certificate, fearing that he might later be held financially responsible for the child.

Mother and father had a stormy relationship, with episodes of domestic violence. Several times mother returned to her parents' home in Colorado, only to reconcile with father and return to Missouri.

In April 1995, mother married I.R.D. (stepfather) and returned to Colorado permanently. In May 1995, father filed a paternity action in Missouri and had mother served personally in Colorado in July 1996. In the meantime, mother had filed a custody action in Colorado in May 1996.

In August 1997, stepfather filed a verified petition for stepparent adoption, which indicated that there was no prior custody order and that mother had consented to the adoption. Father objected to the petition, stating that he had not abandoned G.L.R., had attempted to obtain visitation, and had filed a custody petition in another court.

Father also filed a motion to dismiss the petition, alleging that it failed to allege a basis under which G.L.R. was available for adoption. He asserted that the child was not available for adoption and reiterated that he did not consent to the adoption and had been "fighting" to obtain custody of, and parenting time with, him. Finally, father maintained that mother had been secreting G.L.R. and should not be rewarded for that action.

At the hearing, held in February 1998, father admitted that he had provided no support for G.L.R. since August 1994.

The trial court found, by clear and convincing evidence, that father had not shown good cause for his failure to pay child support since August 1994. It found that, "at least" from July 1996, when mother was served in Colorado with process in father's Missouri paternity action, father "had to know where the child was." And, the court went on to find that father was capable of paying support throughout the time in question. Finally, the court found, based on father's "track record," that he would not pay child support in the future.

Thus, the court terminated father's parent-child legal relationship with G.L.R. and granted the petition for stepparent adoption.

## I.

■ Father first asserts that, because the amended petition for adoption was not verified, the trial court erred in determining G.L.R. was available for adoption. We disagree.

Pursuant to §19–1–106(1), C.R.S.1998, and C.R.J.P. 1, proceedings under the Children's Code are governed by the Colorado Rules of Civil Procedure when, as here, no other rule or statute applies. C.R.C.P. 15(a) allows for the amendment of pleadings, after a response has been made, and provides that such "leave shall be freely given when justice so requires." *See Varner v. District Court*, 618 P.2d 1388 (Colo.1980)(fact that proposed amendment set forth alternative theory for recovery did not support withholding of permission to amend).

■ In February 1998, two days before the scheduled hearing, stepfather filed a motion to amend the previously filed petition for adoption. He stated that the gravamen of the current petition for adoption was father's failure to provide reasonable support for the child for a period of one year or more. That motion was granted.

One day before the hearing, father filed another motion to dismiss. He objected to the motion to amend the petition for stepparent adoption, arguing that termination could not be based upon non-support when a court order for support had never been entered. Father also asserted that the amended petition had not been verified, thus violating §19–5–208(2), C.R.S.1998. The trial court denied the motion in its entirety. Specifically, the court rejected father's objection concerning the lack of verification, finding that father had waived such objection by failing to raise it at his first appearance.

Because the motion to amend was filed only two days before the hearing, it cannot be said that father failed to raise the verification issue in a timely manner. Nevertheless, this court may disregard an error that is harmless. *See People in Interest of A.M.*, 786 P.2d 476 (Colo.App.1989).

Here, stepfather's original petition was verified and mother testified under oath concerning father's non-payment of child support. Father did not dispute that he had not paid child support since August 1994, but opposed termination, arguing that a court order for support was required. Therefore, under these circumstances, even if we were to assume that a verified amended petition should have been filed, we conclude that any error was harmless and does not require reversal. *See People in Interest of A.M.*, *supra* (failure of department to sign verified dependency petition was harmless since department was represented by attorney at all proceedings before the court and attorney entered her appearance for department on record in open court).

## II.

Father also contends he was denied due process because his parental rights were terminated for failure to pay support when no

order requiring the payment of child support had ever been entered. We disagree.

■ Due process requires that a parent receive adequate notice of a termination hearing and an opportunity to protect his or her interests at the hearing. Therefore, a parent is entitled to adequate notice of the grounds upon which termination is sought and of the date on which the termination hearing will be conducted. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986). Because the fundamental liberty interest of the parent in the relationship with the child is involved, the clear and convincing evidentiary standard applies to parental rights terminations involved in stepparent-initiated adoptions. *In re Petition of R.H.N.*, 710 P.2d 482 (Colo.1985).

Under §19–5–203(1)(d)(II), C.R.S.1998, the court must first determine whether the stepparent adoption is in the best interests of the child. *E.R.S. v. O.D.A.*, 779 P.2d 844 (Colo. 1989). If the court answers that question in the affirmative, it must then consider whether the child is "available for adoption." *In re Petition of R.H.N., supra.* Section 19–5–203(1)(d)(II) establishes that a child in a stepparent adoption is available for adoption if the other birth parent has abandoned the child or has failed without cause to provide "reasonable support" for the child for a period of one year or more.

■ Because of the harshness of permanently terminating parental rights, there must be strict compliance with §19–5–203(1)(d)(II). *In re Petition of T.C.H. v. J.M.S.*, 190 Colo. 246, 545 P.2d 1357 (1976). Nevertheless, whether a parent has failed to provide "reasonable support" is a question of fact, which must be determined by the circumstances and which varies from case to case. *In re Petition of F.J.H.*, 628 P.2d 159 (Colo.App.1981). In *F.J.H., supra,* a division of this court rejected the argument that termination was permitted simply because a parent, who had not otherwise abandoned the child, failed to provide the full amount of annual support required by the previous order.

Termination was also denied in *In re Petition of T.C.H. v. J.M.S., supra.* There, the father had received custody of seven of the parties' children, and the divorce decree provided that no amount of child support was to be paid by either party based upon the lack of any present income. In that case, the court reasoned that father had had an express judicial release of the obligation for support, which had never been modified.

However, the supreme court addressed the precise issue presented here in a case arising under the original statutory provision for stepparent adoption, which in pertinent part is essentially the same as the current statute. *See In re Petition of Martensen,* 129 Colo. 125, 267 P.2d 658 (1954). There, the court upheld the termination of the parental rights of a father who denied abandonment but who admitted that he had not contributed to the support of his child. The father had argued that he had not failed without cause to provide reasonable support because the mother was independently wealthy and she had neither sought, nor been awarded, support when custody was granted to her. This argument was rejected.

In addition, previous supreme court decisions have rejected general constitutional attacks upon the statute permitting stepparent adoption in the absence of consent by the natural parent. *See Stjernholm v. Mazaheri,* 180 Colo. 352, 506 P.2d 155 (1973); *Buder v. Reynolds,* 175 Colo. 28, 486 P.2d 432 (1971).

■ Here, the trial court found that, because children have a right to support from their parents, §19–5–203(d)(II) does not require the existence of a prior court order as a prerequisite to the determination that a natural parent has failed without cause to provide reasonable support. Instead, the statutory requirement that the failure to support must be without cause provides sufficient protection to the natural parent. We agree with this conclusion.

Further, we are not persuaded that the decision in *E.R.S. v. O.D.A., supra,* requires a different result. That opinion clarified what must be established in a stepparent adoption proceeding regarding the likelihood of the natural parent's payment of future child support. In dictum, the court stated that "a natural parent's noncompliance with a

court order to make support payments for over a period of a year or more is strong evidence that the natural parent is unlikely to pay child support in the future." *E.R.S. v. O.D.A., supra,* 779 P.2d at 849.

However, the legal issue whether the parent had failed without cause to pay child support for over a year was not in question in *E.R.S.* Here, in support of his position, father points to the court's statement in *E.R.S.* that: "For instance, an adoption is not allowed until it has been proven by clear and convincing evidence that the natural parent has for over a year unjustifiably refused, in violation of a *court order,* to pay any child support." *E.R.S. v. O.D.A., supra,* 779 P.2d at 850 (emphasis added). However, we do not read this statement or other similar comments in *E.R.S.* as requiring the conclusion proposed by father.

▇ The record here shows, and father admitted, that he had failed to provide any support for over a year preceding the filing of the petition for stepparent adoption. The trial court found that father had not paid any support since August 1994, even though he had been working and had known how to reach mother at least since July 26, 1996, a year and one-half before the hearing. The court also noted that the petition for adoption set forth mother's address. Accordingly, the court's determination, that father had failed to provide reasonable child support for over one year and that, therefore, the child was available for adoption, reflected a correct application of the law.

### III.

Father finally contends that, even if the child was available for adoption, termination was not appropriate because he was ready, able, and willing to pay future support. We disagree.

▇ In order to provide a procedure that is fundamentally fair, once a court has determined that a natural parent has failed to provide child support during the twelve-month period immediately preceding the filing of a petition under §19–5–203(d)(II), the court must look beyond that period to determine whether there is "any likelihood that the natural parent will provide child support." *E.R.S. v. O.D.A., supra,* 779 P.2d at 848.

▇ In determining the likelihood that a natural parent will pay future child support, a court should consider several factors including, in particular, the frequency, consistency, and duration of the natural parent's past payments of support. It should also consider the parent's statements regarding intent to pay in the future and any other evidence, such as employment stability and any change in circumstances, that bear on the likelihood that the parent will pay child support on a regular basis in the future. Ultimately, the issue is one of fact. *E.R.S. v. O.D.A., supra.*

Here, the trial court found with record support that, based on his past record, father was not likely to pay child support in the future. This factual determination is binding on appeal. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

The judgment is affirmed.

· Judge PLANK and Judge ROTHENBERG, concur.