24CA0307 Adoption of ACZ 12-05-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0307
El Paso County District Court Nos. 23JA105 & 23JA106
Honorable Lin Billings Vela, Judge

In the Matter of the Petition of K.R.N.,

Appellee,

for the Adoption of A.C.Z. and F.P.Z., Children,

and Concerning A.Z-M.,

Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Brown and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 5, 2024

Grob & Eirich, LLC, Timothy J. Eirich, Lakewood, Colorado, for Appellee

The Drexler Law Group, LLC, Matthew B. Drexler, Teresa A. Drexler, M. Addison Freebairn, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this stepparent adoption proceeding, A.Z-M. (father) appeals the juvenile court's judgment terminating his parent-child legal relationships with A.C.Z. and F.P.Z. (the children).  We affirm.

## I.    Background

¶ 2    Father began paying child support for the children though the Family Support Registry in 2014.  A dependency and neglect case opened in 2016 but closed in 2017 with a judgment allocating parental responsibilities (APR).  The APR granted sole decision-making responsibility and primary custody to mother and allowed "no visitation between father and the children until further order of the court."

¶ 3    K.R.N. (stepfather) filed a petition to adopt the children in May 2023.  Stepfather argued that father's parental rights should be terminated because father abandoned the children for one year or more and failed, without cause, to pay reasonable support.  When the petition was filed, A.C.Z. was fifteen years old and F.P.Z. was thirteen years old.  Both children consented to the filing of the petition and their adoption by stepfather.

¶ 4     After a contested hearing, the juvenile court terminated father's parental rights based on both his failure to pay reasonable support and abandonment.

## II.     Continuance

¶ 5     Father first contends that the juvenile court erred by denying two requests for a continuance. We discern no error.

¶ 6     A motion for continuance is left to the sound discretion of the juvenile court, and its ruling won't be disturbed on appeal absent a clear abuse of that discretion. *In re C.A.O.*, 192 P.3d 508, 512 (Colo. App. 2008). In ruling on the motion, the court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, while considering the child's need for permanency. *Id.*

¶ 7     First, father contends that continuing the hearing would have allowed him to appear in person, but that's not what he told the juvenile court. At the beginning of the hearing, father's counsel requested a continuance "so that [father] could appear in the future by Webex." The court denied the request to continue and encouraged father's participation by Webex that day, even though he failed to file a pretrial motion for a remote appearance. Shortly

thereafter, father joined the hearing by Webex, was given permission to text with his attorney to communicate during the course of the hearing, and later testified.

¶ 8    Next, father contends that the juvenile court erred by declining a second request for a continuance. Father argues that he had evidence that would have demonstrated his intent to pay child support but was "not permitted to provide it to the court" because the court denied his request to return at a later date with the documentation.

¶ 9    Father testified that he had money order receipts that would show that he tried to send funds to the Family Support Registry. But he wasn't near the courthouse, couldn't come in person, and didn't have the documentation with him to refer to during his testimony. Father testified that he didn't plan to have the documentation with him because "everything was supposed to show up in the record from the family registry" which stepfather disclosed before the hearing. In closing arguments, father's counsel argued that "if the court is willing to continue the matter, [father would] bring whatever documentation he has."

¶ 10    The juvenile court considered this request but found that it was unlikely that father made the payments he claimed. Furthermore, the court found that father was familiar with the court system, knew about the termination hearing, chose not to appear in person, and chose not to have documentation with him. And the court found that any further delay wasn't in the children's best interests.

¶ 11    The court's ruling reflects a "proper balancing of the reasons proffered for the continuance, the need for prompt resolution of the proceeding, and the children's best interests." *People in Interest of T.E.M.*, 124 P.3d 905, 909 (Colo. App. 2005). We therefore perceive no abuse of discretion in the court's denial of the motion to continue.

### III. Termination of Father's Parental Rights

¶ 12    Father next challenges the merits of the juvenile court's ruling granting stepfather's petition to adopt the children. Before a juvenile court may grant a stepparent's petition for adoption and terminate a natural parent's parental rights, the court must make two findings: (1) that the stepparent adoption is in the children's best interest; and (2) that the children are "available for adoption."

4

*In re I.R.D.*, 971 P.2d 702, 705 (Colo. App. 1998); *see also* § 19-5-203(1)(d)(II), C.R.S. 2024.  Both findings must be supported by clear and convincing evidence.  *In re Petition of R.H.N.*, 710 P.2d 482, 488 n.5 (Colo. 1985).  Clear and convincing evidence is "evidence that is highly probable and free from serious or substantial doubt."  *L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 39 (citation omitted).

¶ 13    On appeal, father challenges the juvenile court's finding that the children are available for adoption, but not its best interest finding.  A child may be found available for adoption by a stepparent when a "birth parent has abandoned the child for a period of one year or more or . . . has failed without cause to provide reasonable support for such child for a period of one year or more."  § 19-5-203(1)(d)(II).  Either ground is sufficient, as "abandonment and failure to provide reasonable support are separate and independent grounds for declaring a child available for adoption."  *E.R.S.*, ¶ 61

### A.    Failure to Provide Reasonable Support

#### 1.    Standard of Review and Applicable Law

¶ 14    The appropriate time frame for determining whether a parent has failed without cause to provide reasonable support is the twelve

months before the filing of the adoption petition. *In re E.R.S.*, 2019 COA 40, ¶ 49. If the court determines that a parent hasn't paid reasonable support during that twelve-month period, it then looks beyond that period to determine whether there is a likelihood that the parent will provide support in the future. *Id.*

¶ 15     Whether a parent has paid reasonable support in the past or is likely to provide reasonable support in the future are factual questions for the juvenile court to determine on a case-by-case basis, considering the evidence as a whole, including the credibility of the witnesses. *Id.* at ¶ 51.

¶ 16     "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. When the evidence conflicts, a reviewing court may not reweigh the evidence or substitute its judgment for the juvenile court's judgment merely because there might be evidence supporting a different result. *See People in Interest of A.J.L.*, 243 P.3d 244, 256 (Colo. 2010).

2.  Failure Without Cause to Provide Reasonable Support

¶ 17    The juvenile court found that father didn't provide any support to the children in the year before the filing of the petition.  In reaching this conclusion, the court considered father's testimony that he attempted to make some payments to the registry.  The court found there was "no likelihood" that father made any payments during the relevant time frame — the year prior to the filing of the petition — and, "if any payments were attempted by [father], they weren't attempted until the filing of this petition in May of 2023."  The court found, "[e]ven taking the evidence in the light most favorable to [father], there's nothing in the Family Support Registry that shows any attempts to make payments between September 9th of 2020 and July 20, 2023."  The court found that it was "absolutely clear there [were] no payments made or attempted to be made according to the records between September 2020 and, at the earliest, July of 2023."

¶ 18    The record supports these findings.  Mother and stepfather testified that the last child support payment they received was in September 2020. Two reports from the Family Support Registry were entered into evidence; both reflected that the last payment

7

distributed was in September 2020. Father's testimony, which the court didn't find credible, was that he made "maybe six or seven" payments in the year before the petition was filed. While the registry's record suggested that some money was received but not paid out to mother, all of those entries were after the filing of the petition.

¶ 19  Moreover, the juvenile court found father's testimony that he made or attempted to make payments during the relevant time period incredible. The court "found [father's] answers to be somewhat evasive" and not "focus[ed] on the question being asked."

¶ 20  To the extent that father now argues that the court erred by making a credibility determination over Webex, we aren't persuaded. It's for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982). The court noted that father "chose not to come" to court in person and because of that choice the court was "denied the opportunity . . . [and] the ability to observe him in court."

¶ 21    Father further contends that his failure to pay wasn't "without cause." But the juvenile court found that although father was working, it "didn't hear anything about something beyond [father's] control that left him unable to pay reasonable support." Notably, father didn't argue before the juvenile court that he had cause for his failure to provide reasonable support. *See People in Interest of T.E.R.*, 2013 COA 73, ¶ 30 (generally, issues not raised in the trial court will not be considered on appeal).

¶ 22    Father next asserts that his attempts to send payments to the Family Support Registry "should have given rise to sufficient doubt to preclude" a finding that he failed to provide reasonable support.

¶ 23    It's within the juvenile court's purview to weigh evidence, including conflicting evidence, and determine witness credibility. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 (noting that "our supreme court has . . . expressed unbridled confidence in [trial] courts to weigh conflicting evidence"); *see Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999) (recognizing "the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses" and "discourag[ing] an appellate court from second-guessing those judgments based on a cold record").

¶ 24    We therefore conclude that the record supports the juvenile court's findings, and we perceive no error in the court's legal conclusion that father failed without cause to provide reasonable support to the children in the twelve months before the filing of the stepparent adoption petition.

### 3.    Likelihood of Future Support

¶ 25    Father further argues that the juvenile court erred by finding that he was unlikely to provide reasonable support in the future. Again, we discern no error.

¶ 26    In determining the likelihood a parent will pay future support, a juvenile court may consider factors including: frequency, consistency, and duration of past payments of support; statements regarding intent; and other evidence such as employment stability and any change in circumstances. *E.R.S.*, ¶ 50.

¶ 27    The juvenile court found that father was unlikely to provide future support. In doing so, the court reviewed the history of child support payments starting in 2014 and found that father's payment history was sporadic and inconsistent "with significant gaps in payments." The court also found that the irregular amounts of "a lot of payments" indicated that money was not coming from father

but was "perhaps intercepted through some other resource." The court found that father owed more than $33,000 in arrearages.

¶ 28     The juvenile court did find that father had attempted some payments *after* the petition had been filed. But the court also found father's testimony "that he intended or has had the intent to continue to pay child support" was "just not consistent with the testimony of [mother] who's had to resort to the court for enforcement, nor is it consistent with the payment history from the family registry account."

¶ 29     The record supports these findings. The Family Support Registry disbursement record reveals irregular and inconsistent payments over a span of almost ten years. The disbursement record doesn't have any entries for the year before the petition was filed or the eighteen months before that. The Family Support Registry's Account Summary lists a past due balance of $33,616.86 — a figure that father didn't contest. Mother's uncontested testimony was that she "routinely" asked the domestic relations court to enforce payment of father's support obligation. The Family Support Registry record lists amounts received between July 2023 and November 2023 — after the petition was filed — that were, for

reasons not explored by the parties, not paid to mother. Regardless, these amounts aren't regular or consistent.

¶ 30 Given this record, we perceive no error in the court's findings or legal conclusion that father was unlikely to provide support for the children in the future.

## B. Abandonment

¶ 31 Finally, father contends that the juvenile court erred by finding he abandoned the children. Because we discern no error in the court's findings that father failed without cause to provide support to the children, we need not address this argument. *See E.R.S.*, ¶ 61.

## IV. Disposition

¶ 32 The judgment is affirmed.

JUDGE BROWN and JUDGE HAWTHORNE concur.