In the Matter of the PETITION OF
J.D.K. and T.W.K., Petitioners–
Appellees,

For the Adoption of H.E.P., a Child,

and

Concerning L.M., Respondent–Appellant.

No. 01CA0064.

Colorado Court of Appeals,
Div. III.

Nov. 8, 2001.

Rebecca A. Casey, Grand Junction, CO, for Petitioners–Appellees.

Kevin R. Kennedy, Grand Junction, CO, for Respondent–Appellant.

Opinion by Judge JONES.

L.M. (mother) appeals from the judgment terminating the parent-child legal relationship with her daughter, H.E.P., and permitting the paternal grandparents, J.D.K. and T.W.K., to adopt the child. We affirm.

## I.

The mother first contends that the trial court erred in applying the criteria of § 19–5–203(1)(k), C.R.S.2001. She argues that abandonment could not be found as a matter of law because she attempted to call her daughter on her birthday during the twelve-month period prior to the filing of the petition for adoption. We disagree.

As relevant here, under § 19–5–203(1)(k), a child may be available for adoption upon:

> [s]ubmission of an affidavit or sworn testimony of the legal custodian ... that the birth parent or birth parents have aban-

doned the child for a period of one year or more or ... have failed without cause to provide reasonable support for such child for a period of one year or more.

In assessing whether a parent has abandoned a child, the court must examine the totality of the circumstances, viewed in light of the best interests of the child. *In re Petition of G.D.*, 775 P.2d 90 (Colo.App.1989). Proof must be by clear and convincing evidence. *In re Petition of E.R.S.*, 779 P.2d 844 (Colo.1989).

While the mother was not released from probation until September 1999, she did not seek contact with her daughter until the child's birthday in October 1999. Thereafter, she did not seek further contact with the child until after the petition for adoption was filed in June 2000. We decline to adopt a rule, as a matter of law, that a single phone call made during the year prior to the filing of the petition precludes a finding of abandonment.

Because the clear and convincing evidence supports the court's findings and conclusion that the mother abandoned her child for the year preceding the filing of the petition for adoption, we will not disturb them on appeal. *See In re Petition of G.D., supra.*

## II.

The mother also contends that she was denied due process because she was prohibited from seeing her daughter during part of the twelve-month period preceding the filing of the petition for adoption. We disagree.

■ Because natural parents have a fundamental liberty interest in the companionship, care, custody, and management of their children, a court must provide parents with fundamentally fair procedures if termination of parental rights is sought. *In re Petition of R.H.N.*, 710 P.2d 482 (Colo.1985). Procedural due process requires notice and an opportunity to be heard. *People in Interest of D.G.*, 733 P.2d 1199 (Colo.1987).

■ Here, the mother was convicted of a misdemeanor sex offense on a child and placed on probation between 1995 and 1999. Nevertheless, she had been granted super-

vised visits with her daughter between February 1996 and August 1996. However, once the mother became involved with another sex offender in August 1996, the conditions of probation prohibited her from having any contact with her daughter. The mother repeatedly was advised that she could resume contact with the child if she were to end the prohibited relationship and to meet additional criteria showing that she was progressing in treatment. She was also advised to obtain legal advice to pursue her stated desire to resume contact with her daughter.

The trial court made extensive and detailed findings concerning the evidence regarding the mother's abandonment of the child. The court found that the decision to continue in a relationship with another sex offender, which resulted in the prohibition of the mother's contact with her daughter, and the decision to complete sex offender treatment were entirely within the mother's control.

Even though a lapse of time may have occurred from June until September 1999, during a turnover of probation officers, the evidence does not show that this delay resulted in a denial of due process to the mother. Rather, the mother failed to comply with the conditions imposed as a result of her probation, and later failed to pursue contact with the child after all parties were notified that the mother was released from probation.

## III.

■ Next, the mother contends that the trial court erred in finding that she had abandoned her child. We disagree.

■ The Children's Code does not define abandonment or establish the substantive criteria upon which to base a finding of abandonment when used as the basis for termination in conjunction with a custodial adoption. However, abandonment of a child by a parent presents primarily a question of intent, best measured by what the parent does rather than what he or she says. In assessing whether a parent has abandoned a child, the court must examine the totality of the circumstances, viewed in light of the best interests of the child. This assessment must

include recognition both that every child is entitled to support and nurturance and that, to preserve parental rights, a parent must give appropriate attention to parental responsibilities. *In re Petition of G.D., supra.*

■ In an adoption proceeding, "the primary consideration is the welfare of the child, secondly the rights of the parents." *In re Petition of E.R.S., supra,* 779 P.2d at 850 (*quoting Moreau v. Buchholz,* 124 Colo. 302, 309, 236 P.2d 540, 543 (1951)).

Here, the grandparents cared for the five-year-old child from the time she was seven-weeks old. The mother visited the child eight out of twelve possible occasions between February 1996 and August 1996, when the conditions of probation prohibiting contact with the child were imposed. As previously stated, the mother's actions prevented the prohibition from being lifted. During the year prior to the filing of the petition for adoption, the mother also made only one attempt to contact the child.

Thus, the mother had not developed a relationship with the child and was essentially a stranger to her. And even though the evidence was conflicting, as noted by the trial court, the totality of the circumstances supports the determination that the mother abandoned the child. *See In re Petition of G.D., supra.*

### IV.

■ The mother also contends that the trial court should not have terminated her parental rights without first determining whether she would be likely to abandon the child in the future. The evidence in this case was unequivocal that mother was likely to exercise visitation with the child in the future if termination of the parent-child legal relationship was not ordered. She argues that, absent such a finding, she was denied due process and equal protection of law. We disagree.

In a termination and stepparent adoption case involving non-support, the supreme court held that, to provide a procedure that is fundamentally fair, after a court has determined that a natural parent has failed to provide child support during the twelve-

month period immediately preceding the filing of the petition, the court must look beyond the twelve-month period to determine whether there is any likelihood that the natural parent will provide child support in the future. *In re Petition of R.H.N., supra.*

The mother argues that this requirement, which was judicially imposed in an adoption case involving nonsupport by the natural parents, nevertheless, is equally applicable to a termination and adoption proceeding based on abandonment.

■■ However, it is fundamental that a parent does not have an absolute right to custody of a child under any and all circumstances; parental rights must yield to the interests and welfare of the child. Thus, the General Assembly has wide discretion in determining when, and under what conditions, a child may be adopted without the consent of the natural parents. Such statutes are given a liberal construction to carry out their beneficent purposes. *Stjernholm v. Mazaheri,* 180 Colo. 352, 506 P.2d 155 (1973).

Here, the trial court concluded that to permit a termination and custodial adoption, it was not required to find that the mother was likely to continue to abandon the child in the future. The court reasoned that the basis for such a requirement in *R.H.N.* was to avoid the prospect that a parent having a close relationship with a child would have his or her parent-child legal relationship terminated, even though such termination might be detrimental to the child and it was possible that the parent might take up the support duty at a later time, depending on the circumstances.

In contrast, a parent generally does not have a relationship with the child in an abandonment case. Thus, it cannot benefit the best interests of a child to consider the prospects that a parent, having abandoned the child, may later seek to establish a relationship with the child where there has been no support and nurturance.

Here, it is undisputed that the mother did not have a relationship with the child. Further, as the trial court reasoned, the best interests standard encompasses consideration of the benefit of a parent's future rela-

tionship with the child. *Cf. In re Petition of E.R.S., supra,* 779 P.2d at 852 (Erickson, J., specially concurring)(concluding that consideration of the likelihood of future support is not constitutionally required and can be adequately addressed when the court determines where the best interests of the child lie).

As the mother concedes, this case is factually different from *R.H.N.* and *E.R.S.,* in which the terminations and adoptions were based upon the failure to pay support, and not upon abandonment. Thus, the mother did not establish that she is similarly situated to parents who have failed to pay child support, and her equal protection challenge must also fail.

### V.

■ Finally, the mother contends that termination of the parent-child legal relationship was not in the child's best interests. We disagree.

The trial court may grant a custodial adoption if, after a hearing, it is satisfied that the best interests of the child will be served by the adoption. Section 19–5–210(2)(d), C.R.S. 2001.

■ In determining whether termination and adoption would be in the best interests of the child, the court may consider, among other factors: family stability; the present and future effects of adoption, including the detrimental effects of termination; the child's emotional ties to and interaction with the parties; the child's adjustment to the living situation; the child's age; and the mental and physical health of the parties. *See In re Petition of R.H.N., supra.*

Here, the trial court found with record support that the child had developmental delays requiring physical therapy, and she also had emotional problems. She had been seeing a therapist for over a year for incontinence and the inability to sleep, and her need for consistency, continuity, and careful monitoring were above average. The court found that the grandparents had provided thoughtful, attentive, and loving care to the child for the five years of the child's life and that granting the adoption petition was in the child's best interests.

 We are bound by the trial court's factual determinations that are supported by the evidence. *See In re Petition of R.H.N., supra.*

The judgment is affirmed.

Judge ROTHENBERG and Judge NIETO concur.