The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 21, 2019

## 2019COA40

## No. 17CA0956, *Adoption of I.E.H.* — Family Law — Children's Code — Relinquishment and Adoption — Stepparent Adoption

A division of the court of appeals considers whether an appellate court can review an order that terminates parental rights in anticipation of a stepparent adoption when the juvenile court has not finalized the adoption. The division concludes that the order is final and reviewable. After considering mother's substantive arguments, the division affirms the juvenile court's judgment terminating mother's parental rights.

COLORADO COURT OF APPEALS 2019COA40

Court of Appeals No. 17CA0956
Grand County District Court No. 16JA1
Honorable Mary C. Hoak, Judge

In re the Petition of E.R.S.,

Petitioner-Appellee,

for the Adoption of I.E.H., a Child,

and Concerning J.H.,

Respondent-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by CHIEF JUDGE BERNARD
Terry and J. Jones, JJ., concur

Announced March 21, 2019

Maxine LaBarre-Krostue, Grand Lake, Colorado, for Petitioner-Appellee

Azizpour Donnelly LLC, Katayoun A. Donnelly, Denver, Colorado, for
Respondent-Appellant

¶ 1     This is a stepparent adoption proceeding.  J.H., mother, and J.D.S., father, had a child, I.E.H., in 2008.  Mother appeals the juvenile court's judgment terminating her legal relationship with the child.  But, before we get to mother's substantive contentions, we must decide a preliminary question — Can we review an order that terminates parental rights in anticipation of a stepparent adoption when the court has not finalized the adoption?  We answer this question "yes," concluding that the order is final and that we can review it on appeal.

¶ 2     We next turn to mother's substantive contentions.  We first conclude that the juvenile court in this case had jurisdiction to resolve the petition for stepparent adoption even though the child was subject to an existing parenting time order in a paternity proceeding.

¶ 3     Second, we decline to address a series of issues that mother raises on appeal but that she did not preserve in the juvenile court.

¶ 4     Third, we deny mother's assertion that her counsel was ineffective.

¶ 5     Fourth, we reject mother's contention that the juvenile court's findings were insufficient.

¶ 6    We therefore affirm the juvenile court's judgment terminating mother's legal relationship with the child.

## I.  Background

¶ 7    Mother was wounded while serving in the military.  She suffers from post-traumatic stress disorder.

¶ 8    She was the child's primary caregiver when he was born. When the child was about seventeen months old, father initiated a paternity proceeding.  After father proved that he was the child's father, the juvenile court adopted a parenting plan that gave father three nights of parenting time each week.

¶ 9    In May 2013, mother agreed that the child should live full-time with father so that she could have the opportunity to rebuild her life.  Five months later, mother and father formalized this agreement by filing a written stipulation in the paternity case.  It stated that "[m]other shall have parenting time upon agreement of the parties once she is able to regain her stability with housing and employment."  But it also contained two provisions that are central to our analysis.

¶ 10   One provision encouraged mother to maintain her relationship with the child and to spend time with him as (1) her schedule

2

allowed; and (2) as mother and father would agree. The second provision obligated mother to pay $569.38 each month in child support.

¶ 11     The juvenile court adopted the stipulation. But, by 2014, mother had not paid any child support, so the court activated an income assignment to collect it. There was no further action in the paternity case.

¶ 12     In August 2016, the child's stepmother, E.R.S., filed a petition to adopt the child and to terminate mother's parental rights. The juvenile court opened an adoption case, which was separate from the paternity case. Mother filed an objection to the petition in late November.

¶ 13     The juvenile court held a hearing in the adoption case over three days from January to April 2017. At the end of the hearing, the court decided that mother had abandoned the child and that she had not demonstrated sufficient cause to excuse her breach of her obligation to pay child support. The court then determined that it was in the child's best interests to terminate mother's parental rights and to allow stepmother to adopt him.

¶ 14    But the court did not issue an adoption decree. It instead continued the case to hold a final hearing at which it would issue the decree. It also said that, if mother appealed the order terminating her rights and allowing stepmother to adopt the child — which we shall refer to simply as the "termination order" — it would wait to hold the final hearing until after the appeal was resolved.

¶ 15    Mother then filed this appeal in the adoption case. Because it looked like the termination order would not be final until the juvenile court issued the adoption decree, we stayed the appeal to allow stepmother to ask the juvenile court to issue one. But mother objected to the stay. We therefore recertified the appeal, and we ordered mother and stepmother to file simultaneous briefs addressing the question whether the termination order was final.

## II.  Finality of Termination Order

¶ 16    We must decide, as an initial matter, whether the termination order is final even though the juvenile court did not issue an adoption decree. We conclude that the order was final and, therefore, it is appealable.

¶ 17     Section 19-1-109, C.R.S. 2018, governs appeals from proceedings under the Colorado Children's Code, including stepparent adoptions.  Referencing section 13-4-102(1), C.R.S. 2018, section 19-1-109(1) states that a party may appeal "any order, decree, or judgment."  Section 13-4-102(1) adds that the court of appeals has initial jurisdiction over appeals from *final* judgments.

¶ 18     Applying this framework, a division of this court concluded in *People in Interest of S.M.O.*, 931 P.2d 572, 573 (Colo. App. 1996), that the statutory scheme for stepparent adoption did not allow for an appeal of the interlocutory determination that a child was available for adoption, even when the determination was accompanied by an order that terminated parental rights.  The division reasoned that a stepparent adoption proceeding, like all other adoption proceedings, becomes final when the court enters a final adoption decree.  This is so because a parent retains rights and obligations concerning the child until the decree severs them.  *Id.*

¶ 19     In 1997, however, the legislature, in the wake of *S.M.O.*, added subsection (2)(b) to section 19-1-109.  Ch. 254, sec. 7,

§ 19-1-109(2)(b), 1997 Colo. Sess. Laws 1433. Subsection (2)(b) states that an order terminating or declining to terminate the legal relationship between a parent and a child is a final and appealable order. *Id.*

¶ 20 Our supreme court recently considered the interplay between section 19-1-109(1) and (2) in the context of a dependency and neglect proceeding. *See People in Interest of R.S. v. G.S.*, 2018 CO 31, ¶¶ 14-29. The court explained that subsection (1) authorizes the appeal of any final order in a dependency and neglect proceeding. *Id.* at ¶ 19. It added that subsection (2)(b) does not *limit* the types of orders that can be appealed, but, rather, it authorizes appeals from certain *additional* orders beyond those authorized by subsection (1). *Id.* In other words, subsection (1) codifies a general rule of finality, and subsection (2)(b) provides an exception to that general rule by authorizing the appeal of specified termination orders that would not otherwise be final. *Id.* at ¶ 20.

¶ 21 As a result of the change in the law, we conclude that the juvenile court's order terminating mother's parental rights in this stepparent adoption proceeding was final for appellate purposes even though the court had not issued the adoption decree.

### III.  Jurisdiction

¶ 22    Mother contends that the juvenile court did not have subject matter jurisdiction to terminate her parental rights because the court order in the paternity case allowed her to resume parental responsibilities when she was ready.  We disagree.  Instead, we conclude, for the following reasons, that the juvenile court had jurisdiction to terminate her parental rights to the child.

¶ 23    Whether a juvenile court has subject matter jurisdiction is a question of law that we review de novo.  *See People in Interest of M.S.*, 2017 COA 60, ¶ 14.

¶ 24    Subject matter jurisdiction concerns a court's authority to decide a legal question.  *In re Support of E.K.*, 2013 COA 99, ¶ 8.  Adoption proceedings are governed by the Children's Code.  The Children's Code expressly states that, when a district court has issued an order awarding custody or an order allocating parental responsibilities in a dissolution of marriage action or in another proceeding, and the district court assumes continuing jurisdiction over the case, then a juvenile court has jurisdiction in a case involving the same child if she comes within the jurisdiction of the juvenile court.  § 19-1-104(5), C.R.S. 2018.

¶ 25 A juvenile court has exclusive original jurisdiction in cases involving adoptions and cases involving the termination of parental rights. § 19-1-104(1)(d), (g); *see also In re Adoption of K.L.L.*, 160 P.3d 383, 385 (Colo. App. 2007). In other words, a juvenile court has jurisdiction over an adoption case even though a district court may have a parenting time issue before it in a pending dissolution of marriage case. *See D.P.H. v. J.L.B.*, 260 P.3d 320, 327 (Colo. 2011).

¶ 26 In this case, the juvenile court — as opposed to the district court — had continuing jurisdiction over the child via the paternity proceeding. Nonetheless, the juvenile court's ongoing jurisdiction over the child through the parenting time order in the paternity case did not affect its original jurisdiction under section 19-1-104(1)(g) to hear the adoption case.

¶ 27 Mother relies on *In re D.I.S.*, 249 P.3d 775, 781-82 (Colo. 2011), for the proposition that the juvenile court lacked jurisdiction to consider the stepparent adoption. She adds that, under *D.I.S.*, the juvenile court should have enforced the stipulated parenting time agreement.

¶ 28 True, our supreme court concluded in *D.I.S.* that a fit parent's decision to seek termination of a guardianship and to regain the care, custody, and control of his or her child is presumed to be in the child's best interests. *Id.* at 779. It reasoned that a parent's decision to place a child under the care of a third party, for the purposes of furthering the child's best interests, did not result in the relinquishment of the parent's liberty interest in parenting the child. *Id.* at 781. But *D.I.S.* did not address, and therefore has no bearing on, the independent issue of whether a juvenile court has subject matter jurisdiction to consider an adoption petition when the child is subject to an existing parenting time order in another case.

¶ 29 To the extent that mother also asserts that the juvenile court did not have jurisdiction because it did not *cite D.I.S.* in its termination ruling, we reject her argument. *Cf. Early v. Packer*, 537 U.S. 3, 8 (2002)(A state court does not have to cite, or even be aware of, United States Supreme Court cases to avoid making a decision that is contrary to clearly established Supreme Court precedent; what *is* necessary is that the state court's reasoning and result do not contradict the established precedent). Indeed, mother

has not cited any authority, and we do not know of any, that requires a juvenile court to cite a particular case when terminating parental rights in a stepparent adoption proceeding.

## IV. Constitutionality of Stepparent Adoption

¶ 30 Mother contends that the stepparent adoption scheme is unconstitutional on its face and as applied to her because it violates her rights to liberty, to due process of law, and to equal protection of the law. Specifically, she asserts that the stepparent adoption statutes (1) ignore the constitutional presumption that the decisions of a fit parent are in the child's best interests; (2) disregard the constitutional rights and best interests of children; (3) allow a court to terminate a parent's parental rights if she has not paid child support without providing the parent with notice and an opportunity to redress the lack of payments; and (4) do not provide parents with the same process and safeguards that are offered in dependency and neglect proceedings. She also asks us to require juvenile courts to apply the beyond-a-reasonable-doubt burden of proof, which is normally employed in criminal cases, to stepparent adoption proceedings to better protect parents and to impress juvenile courts with the importance of such decisions.

10

¶ 31 We will not address these contentions because mother did not raise them in the juvenile court. *See People in Interest of C.E.*, 923 P.2d 383, 385 (Colo. App. 1996). The fact that mother raises facial and as-applied challenges to some of the stepparent adoption statutes does not lead to a different result. *See In re Catholic Charities & Cmty. Servs.*, 942 P.2d 1380, 1384 (Colo. App. 1997)(electing not to address a parent's contention that a relinquishment statute was unconstitutionally vague when he did not raise it in the juvenile court), *superseded by statute as stated in In re R.A.M.*, 2014 COA 68.

¶ 32 The primary reason why we will not address these issues is because this stepparent adoption proceeding is a civil case. It is governed by sections 19-5-203(1)(d)(II) and 19-5-210(6), C.R.S. 2018, which are part of the Children's Code. C.R.J.P. 1 states that proceedings brought in the juvenile court under the Children's Code are "civil in nature and where not governed by these rules or the procedures set forth in [the Children's Code] shall be conducted according to the Colorado Rules of Civil Procedure." *Accord People in Interest of K.J.B.*, 2014 COA 168, ¶ 9 ("[T]he Colorado Rules of Civil Procedure [generally] apply to those juvenile matters that are

11

not governed by the Colorado Rules of Juvenile Procedure or the Children's Code."); *see also People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007)("Dependency and neglect proceedings are civil in nature . . . ."); *People in Interest of C.G.*, 885 P.2d 355, 357 (Colo. App. 1994)("An action for termination of the parent-child legal relationship is a civil action . . . ."); *cf. A.S. v. People*, 2013 CO 63, ¶ 14 ("[W]e recognize juvenile justice proceedings as civil, rather than criminal, in nature."). *But see People in Interest of C.Z.*, 262 P.3d 895, 901 (Colo. App. 2010)("Analogizing the role of appointed counsel in dependency and neglect cases to that of appointed counsel in criminal cases makes sense because, unlike most civil cases, dependency and neglect cases affect fundamental liberty interests."). This case is therefore a civil case.

¶ 33 Our supreme court has "often noted that issues not presented to or raised in the trial court [in civil cases] will not, as a general matter, be considered on appeal." *Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 549 (Colo. 2006); *accord People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006)(applying the same rule in a dependency and neglect case); *People in Interest of V.W.*, 958 P.2d 1132, 1134 (Colo. App. 1998)(same).

¶ 34    This general rule is different from the one addressed by Crim.
P. 52(b), which governs criminal cases: "Plain errors or defects
affecting substantial rights may be noticed although they were not
brought to the attention of the court."

¶ 35    But "[t]here is no civil rule analogue" to Crim. P. 52(b). *Wycoff
v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1269
(Colo. App. 2010). We therefore apply plain error only in the "'rare'
civil case, involving 'unusual or special' circumstances — and even
then, only 'when necessary to avert unequivocal and manifest
injustice.'" *Id.* (quoting *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188,
1195 (Colo. App. 2009), which discussed *Blueflame Gas, Inc. v. Van
Hoose*, 679 P.2d 579, 586-87 (Colo. 1984), and *Robinson v. City &
Cty. of Denver*, 30 P.3d 677, 684 (Colo. App. 2000)).

¶ 36    Mother urges us to do more in this case than apply the plain
error doctrine. She instead wants us to push past plain error to
employ a concept uniquely rooted in criminal cases known as
"structural error." "Structural error applies to 'structural defects' in
a criminal trial that affect 'the entire conduct of the trial from
beginning to end' such that the 'criminal trial cannot reliably serve
its function as a vehicle for determination of guilt or innocence.'"

13

*Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 473 (Colo. App. 2003)(quoting *People v. Price*, 969 P.2d 766, 768-69 (Colo. App. 1998)). Examples of structural error include "the absence of defense counsel, a biased adjudicator, the unlawful exclusion of members of the defendant's race from the grand jury, and [violations of] the right to a public trial." *Price*, 969 P.2d at 768-69 (citations omitted). Structural errors "are not amenable to either a harmless error or a plain error analysis because such errors affect 'the framework within which the trial proceeds,' and are not errors in the trial process itself." *Griego v. People*, 19 P.3d 1, 7 (Colo. 2001) (quoting *Bogdanov v. People*, 941 P.2d 247, 252-53 (Colo. 1997)). As a result, "[t]hey require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction." *People v. Flockhart*, 2013 CO 42, ¶ 17. But the United States Supreme Court has recognized that structural error occurs "[o]nly in rare cases." *Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006).

¶ 37 We conclude that structural error does not apply to civil cases such as this one because "neither the United States Supreme Court nor the Colorado Supreme Court has extended the structural error

analysis to civil cases." *People in Interest of R.D.*, 2012 COA 35, ¶ 31 (termination of parental rights in the context of a dependency and neglect case); *see also Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 24 ("No concept of 'structural error' . . . has been recognized in the civil arena.").

¶ 38    We instead proceed to apply the familiar principles native to civil cases: Is this one of those rare cases, involving unusual or special circumstances, in which we must apply the plain error doctrine to prevent an unequivocal and manifest injustice?  *See Wycoff*, 251 P.3d at 1269.  For the following reasons, we answer this question "no."

¶ 39    First, there were no unusual or special circumstances that made this case rare.  We recognize the seriousness of the core issue in this case: mother had a "fundamental liberty interest . . . in the care, custody, and management" of the child.  *People in Interest of A.M.D.*, 648 P.2d 625, 632 (Colo. 1982)(quoting *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)).  But, with such seriousness in mind, we nonetheless recognize that the juvenile court followed established procedures while applying the adoption statute, section 19-5-203(1)(d)(II), which had been in effect for some time.

¶ 40   The facts leading to termination of parental rights in the context of adoption cases obviously differ from case to case. But nothing in this case to suggests that it is categorically different from other adoption cases involving the termination of parental rights.

¶ 41   Second, there was no unequivocal and manifest injustice in this case. Mother was entitled to fundamentally fair procedures, *id.*, and the procedures in this case were fundamentally fair. She had an attorney; she received timely notice that her parental rights could be terminated; the juvenile court held a hearing at which she had an opportunity to present evidence, at which her attorney cross-examined the witnesses against her, and after which the court's termination order was based on the clear-and-convincing standard of proof; there is no indication that the juvenile court abandoned its role as an impartial decisionmaker; and the juvenile court was required to find that termination of mother's parental rights was in the child's best interests. *See A.M. v. A.C.*, 2013 CO 16, ¶¶ 28-29; *D.P.H.*, 260 P.3d at 323; *E.R.S. v. O.D.A.*, 779 P.2d 844, 847-48 (Colo. 1989); *In re R.H.N.*, 710 P.2d 482, 486 (Colo. 1985).

## V. Ineffective Assistance of Counsel

¶ 42    Mother alleges that her trial counsel was ineffective because she did not raise the various issues discussed in Part IV. She did not make these allegations in the juvenile court. Rather, she first made them in this appeal in two similar sentences in the opening brief.

¶ 43    The first sentence is in a section entitled "Statement of the Issues Presented for Review": "Whether mother's pro bono counsel, who had not been trained to represent parents in termination proceedings, was ineffective because, among other things, she failed to cite the controlling legal authorities and request that the court afford the mother and the child the required constitutionally required protections during the termination proceedings."

¶ 44    The second sentence appears in a section of the argument entitled "Ineffective Assistance of Counsel": "[M]other's untrained pro bono counsel's failure to cite to the applicable law and raise the issues raised in this appeal is ineffective assistance of counsel per se, forced on . . . mother by the [juvenile] court's failure to provide her and her child trained appointed counsel."

17

¶ 45 These allegations lack significant detail and specificity. What training did trial counsel lack? Why would such training lead counsel to raise the issues that mother has now raised on appeal? And, importantly, mother does not describe on appeal how trial counsel's performance was "outside of the wide range of professionally competent assistance" or how she was "prejudiced by counsel's errors." *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

¶ 46 "If [a] parent's allegations lack sufficient specificity, the ineffective assistance claim may be denied without further inquiry." *Id.*; *accord People in Interest of S.L.*, 2017 COA 160, ¶ 60. We conclude that mother's allegation that trial counsel was ineffective lacks sufficient specificity. We therefore deny it without further inquiry.

## VI. Failure to Provide Reasonable Support

¶ 47 Mother contends that the juvenile court did not make sufficient findings to support its decision that she had not provided reasonable support for the child. She asserts that the court did not give her due credit for her efforts to pay monthly support within her means, that it did not identify what a reasonable amount of support

18

would have been, and that it did not explain how she lacked cause to pay that amount. She also submits that the record does not support the court's determination that she was unlikely to pay support in the future, adding that there is no evidence that her lack of support payments evinced an intent to abandon the child.

¶ 48 Although we are not persuaded by any of these contentions, we recognize that mother was wounded serving her country and has encountered significant difficulty since. But the child's best interests in this case are paramount. "The conflict between the best interests of the child and the natural parent's right to parenthood, which can arise in a stepparent adoption [case] . . ., is resolved in Colorado law by placing primary importance on the best interests of the child." *E.R.S. v. O.D.A.*, 779 P.2d 844, 850 (Colo. 1989).

## A. Applicable Law

¶ 49 The appropriate timeframe for determining whether a parent has failed, without cause, to provide reasonable support to a child is the twelve months preceding the filing of the adoption petition. *R.H.N.*, 710 P.2d at 487. Once the court decides that the parent has not paid reasonable support during this twelve-month period, it

then looks beyond that period to determine whether there is any likelihood that the parent will provide child support. *Id.*

¶ 50    In determining the likelihood that the parent will pay future support, the court should consider the frequency, consistency, and duration of the parent's past payments; the parent's statements about his or her intent to pay in the future; and other evidence, including stability in employment, change of employment, or changes in other relevant circumstances. *In re I.R.D.*, 971 P.2d 702, 706 (Colo. App. 1998).

¶ 51    The questions whether a parent has not paid reasonable support and whether she is likely to pay support in the future are factual ones that the court must decide on a case-by-case basis, considering all the evidence as a whole, including the credibility of the witnesses. *In re F.J.H.*, 628 P.2d 159, 160 (Colo. App. 1981); *see E.R.S.*, 779 P.2d at 849.

## B.  Sufficiency of the Court's Findings

¶ 52    A juvenile court's findings are adequate when they conform to the statutory criteria for termination and when they sufficiently address each requirement for termination of parental rights. *See People in Interest of T.L.B.*, 148 P.3d 450, 457 (Colo. App. 2006).  We

will not set aside a termination order if the court's findings conform to the statutory criteria and we can determine the basis for the court's order. *Id.* We conclude, for the reasons we explain next, that (1) we can glean the basis for the juvenile court's order from the record; and (2) the court's findings conformed to the statutory criteria.

¶ 53 Contrary to mother's assertion, the juvenile court did not disregard or dismiss mother's efforts to make support payments within her means. Indeed, the court acknowledged that mother had been unable to make the full court-ordered child support payment each month. The court also recognized that mother had made three child support payments during the year preceding the filing of the adoption petition. The three payments totaled $125.

¶ 54 Nonetheless, the court decided that mother had failed, without cause, to provide reasonable support for the child. As mother points out, the court did not identify what specific amount would have been reasonable. But it noted that mother had been receiving a varying monthly benefit from the Bureau of Veterans Affairs and that she did not have housing expenses. The court determined that the $125 that she had paid was "minimal" and unreasonable.

## C. Likelihood of Future Support

¶ 55    Next, we address mother's contention that the record does not support the juvenile court's determination that mother was unlikely to pay support in the future. We disagree for the following reasons.

¶ 56    As the trial court recognized, in addition to the $125, mother made three more monthly child support payments totaling $175 after the filing of the adoption proceeding. However, the court decided that mother was unlikely to pay future support, given that she had not done so even though she had the opportunity and the ability.

¶ 57    The record supports this determination. Mother explained that, from 2013 until April 2016, she had received just under $600 per month in veterans' benefits, although the agency had withheld the benefits at times because of a debt. Starting in April, she began to receive over $1300 per month in benefits. She also worked occasional jobs.

¶ 58    During part of the year preceding the filing of the adoption proceeding, mother had stayed with a friend rent-free. And, from January through April 2016, mother participated in an inpatient veterans' program. She then lived in a place that provided care for

veterans until she was able to obtain an apartment through a veterans' housing program.

¶ 59 Despite these benefits, mother paid just $125 through the child support registry in the year before stepmother filed her petition to adopt the child. A primary consideration in determining whether a parent will pay child support on a regular and consistent basis in the future is the parent's past conduct regarding child support payments. *E.R.S.*, 779 P.2d at 849. And a parent's noncompliance with a court order to make support payments over a period of a year or more is strong evidence that the parent is unlikely to pay child support in the future. *Id.*

### D. Abandonment

¶ 60 We next turn to mother's assertion that there is no evidence in the record showing that her failure to pay child support proved that she intended to abandon the child. We reject this assertion because (1) we think that it conflates two independent grounds for termination of parental rights; and (2) the juvenile court did not conflate these grounds.

¶ 61 It is true that the juvenile court found that mother had intended to abandon the child. But abandonment and failure to

23

provide reasonable support are separate and independent grounds for declaring a child available for adoption. *See Karkanen v. Valdesuso*, 33 Colo. App. 47, 50, 515 P.2d 128, 130 (1973). And there is no indication that the court considered mother's failure to provide reasonable support as evidence of abandonment.

¶ 62 Rather, the juvenile court relied on evidence in the record showing that mother had not seen or otherwise contacted the child since 2013. The court pointed to the fact that mother did not ask the court for help in contacting the child, even though she also claimed that father had prevented her from doing so. The court referred to circumstantial evidence indicating that mother had become frightened to reinsert herself into the child's life. And mother does not challenge the juvenile court's determination that this evidence established that she had intended to abandon the child.

¶ 63 The judgment terminating mother's parental rights is affirmed.

JUDGE TERRY and JUDGE J. JONES concur.