23CA1523 Peo in Interest of AA 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1523 Weld County District Court No. 17JV682 Honorable W. Troy Hause, Judge The People of the State of Colorado, Appellee, In the Interest of An.A. and Ar.A., Childs-Appellants, and Concerning R.C., Appellee. JUDGMENT AFFIRMED Division III Opinion by JUDGE MOULTRIE Yun and Davidson*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee The People of the State of Colorado Debra W. Dodd, Guardian Ad Litem Patrick R. Henson, Office of Respondent Parents’ Counsel, Justin Twardowski, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellee R.C. *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 An.A. and Ar.A. (the children), through their guardian ad litem (GAL), appeal the juvenile court’s judgment denying the motion to terminate their parent-child legal relationship with R.C. (mother). We affirm. I. Background ¶ 2 In October 2017, a petition in dependency or neglect was filed due to concerns about sexual abuse to then-three-year-old Ar.A. by an older sibling, sexualized behaviors between the siblings residing in the home, possible sexual abuse to the children by father, and mother’s substance use. Ar.A. and then-four-year-old An.A. were removed from the home and placed into foster care. Mother has resided out of state in Wisconsin throughout these proceedings. The children were adjudicated dependent or neglected in November 2017, and the court adopted treatment plans for both parents in December 2017. Father passed away in June 2019. ¶ 3 As relevant here, mother’s treatment plan required her to • reestablish a parenting relationship with the children, including by maintaining contact with the children and 
2 participating in any Interstate Compact on the Placement of Children (ICPC)
1 requests; • maintain sobriety and participate in any recommended substance abuse treatment; and • participate in a psychological evaluation and follow any recommended treatment. ¶ 4 The court later amended mother’s treatment plan to require her to complete a parenting assessment specific to the risk of sexual offending and follow any resulting recommendations. ¶ 5 Alleging that mother had not reasonably complied with her treatment plan and that the plan had not been successful, and noting that the children had been in foster care “most of their lives,” the children’s GAL moved to terminate mother’s parental rights. ¶ 6 The juvenile court held a contested hearing over five days in March 2023. The central issues were mother’s treatment plan compliance and whether mother’s home in Wisconsin could be 1 The Interstate Compact on the Placement of Children facilitates interstate “coordination of placement and provision of services to children being placed by one state’s child protective services agency in a home in another state.” People in Interest of I.J.O., 2019 COA 151, ¶ 9. 
3 approved for placement. An ICPC home study of mother’s home was pending at the time of the termination hearing. After the close of evidence, but before the juvenile court had ruled on the motion to terminate, the Weld County Department of Human Services (the Department) asked to reopen the evidence because it had received the results of the ICPC home study. Over the GAL’s objection, the juvenile court reopened the evidence and allowed the parties to present additional evidence over two days. The juvenile court ultimately denied the GAL’s motion to terminate mother’s parental rights. ¶ 7 In its ruling, the juvenile court found that the GAL had clearly established that the court could find mother unfit based on the length of time the children had been in foster care,
2 but it determined this was due in large part to mother residing out of state and the barriers to the Department’s efforts to implement treatment services for mother. The court found that the GAL had 2 Unless the juvenile court determines certain exceptions not relevant here apply, the juvenile court “shall consider . . . [t]hat [a] child has been in foster care under the responsibility of the county department for fifteen of the most recent twenty-two months” in determining whether a parent is unfit. § 19-3-604(2)(k), C.R.S. 2023. 
4 failed to establish by clear and convincing evidence (1) any other basis for mother’s unfitness; (2) that mother hadn’t reasonably complied with her treatment plan; (3) that her conduct or condition was unlikely to change within a reasonable time; or (4) that mother was unable or unwilling to provide the children with reasonable care to meet their needs. ¶ 8 In reaching these findings, the district court recognized the concerns leading to the filing of the petition, the children’s complex needs, and their need for permanency given the length of time the case had been open. Nonetheless, the court found that mother had substantially complied with her treatment plan; that she had “visited regularly by phone, video conferencing, or in person”; and that although the treatment issues had not “totally resolved,” her relationship with the children had improved and it was not in the children’s best interest to sever that relationship. ¶ 9 On appeal, the GAL argues the juvenile court reversibly erred by concluding that mother substantially complied with her treatment plan and that she could become fit within a reasonable period of time. The GAL also asserts the Department and the juvenile court “jointly violated the children’s right to due process” 
5 by failing to comply with expedited permanency procedures, and that the juvenile court’s failure to order an evaluation of the children’s needs and conditions prior to issuing its final order violated their due process rights. II. Applicable Law ¶ 10 The purpose of dependency or neglect proceedings is to preserve the family and protect children. L.L. v. People in Interest of R.W., 10 P.3d 1271, 1277 (Colo. 2000). Where, as here, children are under six years old when a petition is filed, section 19-1-102(1.6), C.R.S. 2023, provides that expedited placement procedures apply because “children undergo a critical bonding and attachment process prior to the time they reach six years of age.” Thus, for young children removed from their parents’ custody, courts should proceed with “all possible speed” to achieve legal determinations that serve the children’s best interests. § 19-1-102(1)(c). ¶ 11 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the children have been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the 
6 plan has not been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2023; People in Interest of E.S., 2021 COA 79, ¶ 10. It is the parent’s responsibility to comply with a treatment plan. People in Interest of S.M.A.M.A., 172 P.3d 958, 962 (Colo. App. 2007). A treatment plan is successful if “it corrects or improves the original conduct or condition which led to intervention by the state.” People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 39 (quoting People in Interest of C.L.I., 710 P.2d 1183, 1185 (Colo. App. 1985)). ¶ 12 An unfit parent is one whose conduct or condition renders the parent unable to give the child reasonable parental care. § 19-3-604(2). The determination of parental fitness is intertwined with a determination of the child’s best interests. S.R.N.J-S., ¶ 59. But a parent cannot be deemed unfit merely to improve the child’s condition. Id. (citing People in interest of E.A., 638 P.2d 278, 285 (Colo. 1981)). ¶ 13 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves applying the termination statute to evidentiary facts. People in 
7 Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. As the trier of fact, it is within the juvenile court’s discretion to determine the credibility of the witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences to be drawn from the evidence. See id. We review the juvenile court’s findings of evidentiary fact for clear error and accept them if they have record support, but we review de novo the juvenile court’s legal conclusions based on those facts. S.R.N.J-S., ¶ 10. III. Discussion A. Treatment Plan Compliance ¶ 14 The GAL contends that the juvenile court erroneously determined that mother substantially complied with her treatment plan. We disagree. ¶ 15 During the termination hearing, the court heard testimony from numerous witnesses and received multiple exhibits. The GAL asserts that the evidence didn’t support the juvenile court’s finding that mother had substantially complied with her treatment plan because • mother hadn’t sufficiently demonstrated ongoing sobriety or successful completion of substance abuse treatment; 
8 • she hadn’t complied with all treatments recommended by a psychological evaluation or adequately internalized the therapeutic interventions she had participated in; and • there were several ICPC home studies of mother’s home in Wisconsin that were denied and expert testimony suggested that there were concerns about the risk of harm to the children if they were reunified with mother. ¶ 16 The juvenile court found with record support that mother’s out-of-state residence presented a barrier to her ability to engage in treatment. With respect to substance use, a caseworker supervisor — who the parties stipulated was an expert in child protection casework — testified about the Department’s attempts to identify an agency in Wisconsin that could provide random monitored urinalysis testing for mother, but noted numerous procedural complications and barriers such as the testing center’s distance from mother’s home. Despite this, the court received evidence that mother completed several evaluations that diagnosed her as having a substance use disorder in sustained remission and she had been participating in ongoing substance use monitoring through a therapy provider. 
9 ¶ 17 And the caseworker supervisor testified that mother had completed “upwards of [fifty] UAs total that have been negative” over the life of the case, which the caseworker supervisor opined was likely inconsistent with someone experiencing an ongoing “addictive issue.” Similarly, Dr. Sarah Lukens, an expert in psychology called by the GAL, testified that “the longer somebody is able to maintain sobriety — the more evidence there is that they may be able to continue to maintain sobriety.” ¶ 18 The following evidence also supports that mother substantially complied with the therapeutic assessment and intervention portion of her treatment plan: • she completed a parental risk assessment that “showed no elevations” in testing related to dysfunctional sexual behaviors; • she actively engaged in her individualized healthy sexual boundaries curriculum, understood the need for it, and demonstrated an ability to identify potential scenarios that might present a risk of sexual abuse to the children; 
10 • she successfully completed therapeutic parenting coaching and demonstrated her ability to apply the skills she learned in family time with the children; • she completed a parenting assessment that recommended her family time with the children be monitored rather than supervised due to observed improvements in her interactions with the children; • she engaged in ongoing individual therapy to address her trauma history, manage her anxiety and depression, develop trauma-informed parenting skills, and develop and utilize healthy coping skills; and • she successfully engaged in family therapy with the children. ¶ 19 Additionally, as discussed below, mother completed numerous ICPC home studies — seven total — supporting the court’s finding that she substantially complied with this portion of her treatment plan. ¶ 20 It was up to the juvenile court, as the trier of fact, to weigh the evidence — including any conflicting evidence — and assess witness credibility. See People in Interest of A.J.L., 243 P.3d 244, 249-50 
11 (Colo. 2010). Where, as here, the juvenile court’s factual findings are supported by competent evidence in the record, we will not disturb them. Id. at 256 (a reviewing court cannot substitute its opinion for the juvenile court’s when conflicting evidence exists). B. Determination of Fitness ¶ 21 The GAL next asserts
3 that the juvenile court erroneously concluded that mother’s unfitness wasn’t established by clear and convincing evidence. Again, we disagree. ¶ 22 In support of this contention, the GAL contends that the numerous ICPC home studies that were denied demonstrated mother’s ongoing and pervasive inability to provide the children with reasonable parental care. But those home studies identified concerns — such as mother’s history of substance use and the 3 We reject the GAL’s assertion that the juvenile court’s written finding of unfitness controls over the detailed verbal findings it made at the end of the termination hearing. The written order references the court’s verbal findings, even if it doesn’t explicitly incorporate them. See People in Interest of S.R.N.J-S., 2020 COA 12 ¶ 17 (considering the juvenile court’s verbal termination hearing findings where the written order incorporated them by reference). And to the extent there is a “conflict,” the GAL, as the party directed to submit the proposed written order, injected that error and cannot now profit from it. People in Interest of M.H-K., 2018 COA 178, ¶ 19. 
12 children’s sexualized behaviors — that were already being addressed as part of mother’s court-approved treatment plan. And the record reflects that, consistent with its obligation to provide reasonable efforts, the Department made extensive efforts to address the reasons the home studies were denied through the provision of services to mother in Wisconsin and in Colorado, when she traveled here to see the children. See People in Interest of I.J.O., 2019 COA 151, ¶ 17 (noting the department’s obligation to make reasonable effort to help a parent rectify concerns identified in a home study). The court also noted that the ongoing reassessment of mother’s home through the ICPC process was necessary because the children had specialized needs that would likely require ongoing supportive services if the court didn’t terminate mother’s parental rights and authorized the children to transition to her care in Wisconsin in the future. ¶ 23 Thus, the court considered the reasons the home studies had been denied, the services provided by the Department to rectify the concerns, and the circumstances that ultimately led to mother’s home being approved following the initial portion of the termination hearing. The court found with record support that the concerns 
13 referenced in the home studies could be mitigated and concluded the GAL had not proved by clear and convincing evidence that mother’s conduct made her unwilling or unable to give the children reasonable parental care minimally adequate to meet their needs. ¶ 24 Because the court concluded that the GAL hadn’t proved mother’s unfitness after weighing the conflicting but competent evidence, we won’t disturb that conclusion. C. Fitness Within a Reasonable Time ¶ 25 The GAL also contends that the juvenile court erred by finding that mother was likely to become a fit parent within a reasonable time. We disagree. ¶ 26 It’s undeniable that this case has been open for a significant time. However, the children’s need for permanency alone is insufficient to terminate mother’s parental rights. See S.R.N.J-S., ¶ 58. In determining whether a parent’s conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the pendency of the proceeding. People in Interest of A.J., 143 P.3d 1143, 1152 (Colo. App. 2006). A “reasonable time” is relative and determined by the children’s physical, mental, and emotional conditions and needs. 
14 See § 19-3-604(1)(c)(III); K.D. v. People, 139 P.3d 695, 700 (Colo. 2006). ¶ 27 As already noted, the court explicitly considered the treatment progress mother made over the life of the case. Additionally, the court considered evidence that mother and the children enjoyed a positive relationship, which had improved over time. ¶ 28 The court again highlighted the barriers mother’s out-of-state residence presented to identifying treatment services, but it noted that with an approved ICPC home study, mother could potentially begin additional family therapy services in Wisconsin within six months. ¶ 29 Again, it was up to the juvenile court to assess any conflicting evidence. Given mother’s therapeutic progress, her relationship with the children, and an approved home study that would allow the court to consider and plan for potentially transitioning the children to mother’s care, we find no error in the court’s conclusion that the sole conduct or condition that supported a finding that mother was unfit — the fact that she resided out of state — could be rectified within a reasonable time from the children’s point of 
15 view. Because there is evidence in the record supporting the juvenile court’s finding, we won’t disturb its legal conclusion. D. Due Process ¶ 30 The GAL argues that the Department violated the children’s due process
4 rights by failing to secure permanency for them in a timely manner. We decline to address this issue because it has not been properly preserved. ¶ 31 While divisions of this court are divided on taking up unpreserved constitutional arguments in dependency and neglect cases, see People in Interest of M.B., 2020 COA 13, ¶ 34, the general rule in civil cases is that parties may not raise for the first time on appeal “[a]rguments never presented to, considered by, or ruled upon by a [district] court,” Colo. Div. of Ins. v. Statewide Bonding, Inc., 2022 COA 67, ¶ 73. And while talismanic language isn’t required to preserve an issue, a party must have presented the “sum and substance” of the argument to the district court. 4 The GAL states this argument is a “substantive” due process issue but cites Mathews v. Eldridge, 424 U.S. 319 (1976), which provides the test for analyzing procedural due process claims. 
16 Madalena v. Zurich Am. Ins. Co., 2023 COA 32, ¶ 50 (citation omitted). ¶ 32 The sum and substance of the GAL’s argument on appeal — that the juvenile court and the Department denied the children procedural due process and violated their “fundamental liberty interest in being placed in a permanent, secure, stable and loving environment” by failing to secure permanency for them in a timely manner — wasn’t presented to the juvenile court. The GAL’s general references to the expedited placement guidelines and the length of time the case had been open were insufficient to place the juvenile court on notice that a constitutional procedural due process claim was being asserted on the children’s behalf. See Fisher v. State Farm Mut. Auto. Ins. Co., 2015 COA 57, ¶ 44 (holding that where the argument raised in the trial court did not raise a constitutional issue, it was insufficient to preserve a constitutional claim for appeal). ¶ 33 The GAL argues that even if we determine this issue hasn’t been preserved, we should consider it to “avert unequivocal and manifest injustice.” But the juvenile court conducted a thorough hearing on the GAL’s motion. See In re J.D.K., 37 P.3d 541, 543 
17 (Colo. App. 2001) (procedural due process for a termination hearing requires notice and an opportunity to be heard). Thus, the GAL has not demonstrated that a miscarriage of justice occurred. See In re E.R.S., 2019 COA 40, ¶ 41 (holding no manifest injustice occurred where the party was entitled to and received fundamentally fair procedures); see also M.B., ¶ 26 (rejecting assertion of due process violation based on delayed paternity hearing despite statutory mandate that paternity determinations be expeditiously resolved). ¶ 34 We also decline to address the GAL’s unpreserved argument that the juvenile court violated the children’s due process rights by not ordering an evaluation, under section 19-3-604(3), to assess the children’s relationship with mother because the GAL doesn’t identify where in the record the necessity of such an evaluation was presented to the juvenile court. O’Quinn v. Baca, 250 P.3d 629, 631 (Colo. App. 2010) (noting appellant is obligated to identify where issues have been preserved in the record). IV. Disposition ¶ 35 The judgment is affirmed. JUDGE YUN and JUDGE DAVIDSON concur.