24CA0182 Adoption of RP 05-01-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0182
Pueblo County District Court No. 23JA30014
Honorable Gregory J. Styduhar, Judge

In re the Petition of C.M. and S.M.,

Appellees,

for the Adoption of R.P., a Child,

and Concerning M.E.P.,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Grove and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

TurnerZamarripa, Attorneys at Law, LLC, Jennifer A. Zamarripa, Pueblo,
Colorado, for Appellees

Law Office of Dailey & Pratt, LLC, Joel M. Pratt, Colorado Springs, Colorado, for
Appellant

¶ 1     In this stepparent adoption proceeding, M.E.P. (father) appeals the judgment terminating the parent-child legal relationship between him and R.P. (the child) in anticipation of adoption by C.M. (stepfather).  We affirm.

## I.     Background

¶ 2     In 2016, when the child was approximately three years old, father and S.M. (mother) separated.  They were divorced two years later.  Around that same time, father was convicted of having kidnapped and assaulted mother during the couple's separation period.  Father was sentenced to nine years in the Department of Corrections and remained incarcerated at the time of the termination hearing.  Mother met and began dating stepfather when the child was approximately four years old, and they married a few years later.

¶ 3     In 2023, stepfather petitioned to terminate father's parental rights and adopt the child.  Following a hearing, the juvenile court terminated father's parental rights.

## II.     Legal Framework

¶ 4     Natural parents have a fundamental liberty interest in the care, custody, and control of their children.  *See Troxel v. Granville,*

530 U.S. 57, 65-66 (2000).  Thus, parents involved in termination of parental rights proceedings are entitled to "fundamentally fair procedures."  *In re R.H.N.*, 710 P.2d 482, 487 (Colo. 1985); *see also Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982).  To that end, the court must apply "a presumption in favor of preserving parental rights" that can only be overcome by clear and convincing proof of "special factors" that justify the state's interference in the parent-child relationship.  *In Interest of Baby A*, 2015 CO 72, ¶¶ 19, 24.

¶ 5    Still, "a parent does not have an absolute right to custody of a child under any and all circumstances."  *In re Petition of J.D.K.*, 37 P.3d 541, 544 (Colo. App. 2001).  "[T]he General Assembly has wide discretion in determining when, and under what conditions, a child may be adopted without the consent of" a natural parent.  *Id.*

¶ 6    Before the court can grant a stepparent's petition to adopt, it must necessarily terminate the parental rights of the non-custodial natural parent.  *E.R.S. v. O.D.A.*, 779 P.2d 844, 847 (Colo. 1989).  To do so, the court must first determine whether the adoption is in the best interests of the child, *R.H.N.*, 710 P.2d at 485; if it is, the court must then determine whether the child is "available for

adoption" under section 19-5-203, C.R.S. 2024, *E.R.S.*, 779 P.2d at 847.

¶ 7 A child may be available for adoption if, as relevant here, the parent has abandoned the child for one year or more. § 19-5-203(1)(j). The supreme court has long recognized that "[a]bandonment is primarily a question of intent." *Moreau v. Buchholz,* 236 P.2d 540, 543 (Colo. 1951). "The abandonment inquiry focuses on whether, under the totality of the circumstances, the parent's intent during the twelve months preceding the commencement of the adoption proceeding was to abandon the child." *D.P.H. v. J.L.B.,* 260 P.3d 320, 321 (Colo. 2011).

### III. Constitutional Presumption

¶ 8 Father first contends that the juvenile court erred by failing to apply the constitutional presumption in favor of preserving his relationship with the child. Even if we assume father did not need to preserve this claim, we discern no error.

¶ 9 As an initial matter, and contrary to father's argument, there is "no requirement that courts state that they are applying *Troxel*" or that they "track [its] language." *Baby A*, ¶ 24. So the fact that

the court in this case did not mention the presumption does not constitute error.

¶ 10    And we conclude, again contrary to father's argument, that the court gave the appropriate weight to father's interest in parenting the child but found that special factors justified termination. While neither *Santosky* nor *Troxel* defined what "special factors" the court should consider, our supreme court has explained that the *Troxel* presumption is overcome when the court finds a statutory basis for termination by clear and convincing evidence. *Id.* at ¶¶ 28-29.

¶ 11    Here, the juvenile court implicitly recognized that father had a right to parent the child unless the evidence showed that adoption was in the child's best interests and that father had abandoned her. The court made required findings under sections 19-5-203 and 19-5-210, C.R.S. 2024, and applied the correct evidentiary standard. *See id.* at ¶ 28; *see also E.R.S.*, 779 P.2d at 847-48 ("In order to ensure that the proceedings are fair, the statutorily mandated requirements for an adoption . . . must be proven by 'clear and convincing evidence,' a higher standard of proof than is used in most civil proceedings.") (citations omitted). Accordingly, the court afforded father the heightened due process required by *Troxel.*

## IV.  Abandonment

¶ 12     Next, father contends that the evidence was insufficient to establish that he intended to abandon the child.  We disagree.

### A.  Standard of Review

¶ 13     We review the juvenile court's findings of fact for clear error, *see D.P.H.*, 260 P.3d at 325, and review de novo a determination of the proper legal standard to be applied and the application of that standard to the particular facts of the case, *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 14     The credibility of the witnesses as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from them are within the province of the juvenile court.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).  When the record supports the juvenile court's findings, an appellate court cannot reweigh the evidence or substitute its judgment for that of the juvenile court.  *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

## B.  Analysis

¶ 15    The juvenile court found by clear and convincing evidence that father had abandoned the child, based on the following factual findings:

- Father's last visit with the child occurred over five years prior to the hearing on stepfather's petition.

- Though the domestic relations court had ordered parenting time between father and the child, father did not avail himself of any remedies to enforce his court-ordered parenting time.

- Neither the permanent orders entered in the dissolution case nor any conduct by mother precluded father from exercising parenting time.

- In the five years leading up to the hearing, neither father nor anyone on his behalf "reached out to inquire as to how the child [was] doing."

- Other than a single gift immediately following his incarceration, father had not sent anything, directly or indirectly through a third party, to the child.

- Father did not communicate, or attempt to communicate, with the child in the three years before the petition for stepparent adoption was filed.

- Father's complete lack of communicat[ion] with the child evidence[d] [father's] intention to 'permanently relinquish rights and responsibilities with regard to a child.

¶ 16 These findings are supported by the record. The testimony of mother, maternal grandmother, and stepfather established that (1) father had not communicated or attempted to communicate with the child in years; (2) father had not made any effort to enforce his court-ordered visits in over four years and had not seen the child in more than five years; and (3) the child had a close and loving relationship with stepfather and had called him "dad" for about half of her life.

¶ 17 Although father testified that he sent the child letters, and he presented "drafts" of the letters and a list of dates that he had purportedly sent the final letters, the juvenile court did not find his testimony credible. Instead, the court believed mother, who testified that she never received any letters for the child. Father insists that the court should have credited his testimony because

there was no evidence the documents were "inauthentic" or "fabricated," but it is the juvenile court's prerogative to weigh and resolve any conflicts in the evidence. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶¶ 10, 29.

¶ 18    To the extent father asserts that it was improper for the court to allow lay witnesses to testify regarding the handwriting in his drafts, we disagree. "[I]t is not necessary that an expert testify as to the authenticity of [a] writing." *Lewis v. People*, 483 P.2d 949, 952 (Colo. 1971); § 13-25-104, C.R.S. 2024 (allowing witnesses in "all trials and proceedings" to make a comparison of a disputed writing). More importantly, the juvenile court did not rely on the handwriting testimony in reaching its conclusion that father had not sent any letters to the child. *See People in Interest of C.C.*, 2022 COA 81, ¶ 20.

¶ 19    Father also contends that there was "serious and substantial doubt" of his intent to abandon the child because he presented evidence of his efforts to exercise virtual visits and believed he had "exhausted his options." But the juvenile court found that his last effort to see the child was more than three years before the termination hearing and, though he had other methods of enforcing

visits available to him, he chose to place the domestic case "on-hold" until his release from incarceration.  *See Moreau*, 236 P.2d at 543 (Abandonment "is more often determined by what one does rather than by what he says.").

¶ 20  Finally, father argues that there was a legal impediment to his contact with the child and likens this case to *In re J.A.V.*, 206 P.3d 467 (Colo. App. 2009).  Unlike *J.A.V.*, however, where a protection order restrained contact between the parent and the child, father had a court order allowing contact and virtual visits with the child.  True, a protection order restrained contact between father and mother.  But the record shows that father had ways to exercise his virtual visits without violating the protection order, including (1) scheduling parenting time through the court-ordered third party; (2) communicating through mother's attorney; or (3) enforcing visits through the domestic relations case.  Despite these options, the juvenile court found that father had not had contact with the child during the relevant twelve-month period preceding the filing of the petition for adoption.  *See J.D.K.*, 37 P.3d at 544 ("[T]o preserve parental rights, a parent must give appropriate attention to parental responsibilities.").

¶ 21    In sum, the court properly considered the totality of the circumstances in determining, by clear and convincing evidence, that father abandoned the child.  And because the court's findings regarding abandonment are supported by the record, we cannot disturb them.  *See id.* at 545 (an appellate court is bound by the lower court's factual determinations when they are supported by the evidence).

## V.    Insufficient Findings

¶ 22    Father also contends that the juvenile court failed to make sufficient findings concerning the best interests of the child.  We see no basis for reversal.

### A.    Standard of Review

¶ 23    A juvenile court's findings are adequate when they conform to the statutory criteria for termination and sufficiently address each requirement for the termination of parental rights.  *In re E.R.S.*, 2019 COA 40, ¶ 52.  We will not set aside a termination judgment if we can determine the basis for the court's order.  *Id.*

### B.    Analysis

¶ 24    Prior to granting a request for stepparent adoption, the court shall determine that termination and adoption is in the best

10

interests of the child. *R.H.N.*, 710 P.2d at 486. In determining the child's best interests the court may consider, among other factors, the (1) family's stability; (2) present and future effects of adoption; (3) child's emotional ties to and interaction with the parties; (4) adjustment of the child to the living situation; (5) child's age; and (6) mental and physical health of the parties. *Id.*

¶ 25 The juvenile court found that termination of father's parental rights was in the child's best interests because (1) stepfather and mother's home was stable and had been the child's only home for over four years; (2) the child had a loving relationship with stepfather; (3) stepfather supported the child emotionally, mentally, and financially; (4) the child considered stepfather to be a father; and (5) the child had limited emotional ties to father.

¶ 26 These findings are supported by the record and conform to the statutory criteria. In addition to the evidence discussed above, stepfather testified that he wanted to adopt the child because he considered her to be his daughter, and she meant "the world to [him]." He said he had been present for important events in the child's life as well as involved in day-to-day care including

11

homework and bedtime. Even father testified that he was grateful stepfather was in the child's life because he provided "stability."

¶ 27 Father alleges that the court failed to consider the "loss" of the child's relationship with him and his extended family if his rights were terminated. To the contrary, the court considered the child's relationship with both father and his family and found that her "emotional ties with [father] and her interaction with him ha[d] been very limited" and that there was "little evidence of any on-going relationship" between the child and father's family.

¶ 28 Grandmother testified that the child's relationship with father, even before his incarceration, was "nonexistent" and that mother "took total care of [the child] all of the time." She opined that further contact with father would be detrimental to the child's wellbeing. Mother testified that before father was incarcerated, he was emotionally abusive to both her and the child. She recounted incidents in which father put the child's life in danger. According to mother, father was essentially "a stranger" to the child and his primary interest in the child was using her to control mother. As for the child's ties to his extended family, father admitted that the child did not even know some of his family members existed. We

therefore disagree that in assessing the best interests of the child, the court considered only the child's connection with stepfather and not with father.

¶ 29     Because the juvenile court's findings were both supported by the record and sufficient to permit appellate review, we reject father's argument concerning the court's best interests findings.

## VI.     Attorney Fees

¶ 30     Appellate attorney fees are awardable under C.A.R. 39.1 only if the requesting party states a factual and legal basis for recovery. *See In re Marriage of Evans*, 2021 COA 141, ¶ 76.  Stepfather asserts that father's appeal is frivolous, but his support for that assertion appears to be cut and pasted from a different brief, as the reasons for the fee request — discovery and disclosure problems, lack of a complete record, and untimely review of a magistrate order — have nothing to do with this case.  Because stepfather has not adequately explained the basis for the request, we deny it.

## VII.   Disposition.

¶ 31     The judgment is affirmed.

JUDGE GROVE and JUDGE PAWAR concur.

13